CHICAGO AND NORTHWESTERN RAILROAD COMPANY

v.

JEREMIAH CARROLL.

1.  CARRIER OF PASSENGERS—DUTY TO PROVIDE CARS.—A railroad company is not bound under all circumstances to furnish a sufficient number of cars so that all who may apply for transportation may be provided with seats. Unforeseen emergencies may often arise when the performance of such duty would involve impossibilities.   Where passengers apply for transportation in extraordinary and unexpected numbers, it should be held only to the exercise of such reasonable diligence in providing cars as may be consistent with the particular circumstances of each case.

2.  CARE REQUIRED.—There is a broad distinction between the duties and

liabilities of common carriers of freight and of passengers. The former are under an absolute duty to transport and deliver property, from which, when once undertaken, nothing can relieve them but the act of God or the public enemy. The law enjoins upon the latter a very high degree of care and diligence, but unless there is some failure in the exercise of such care and diligence there is no liability for any injuries their passengers may receive.

3. DUTY OF PASSENGER TO AVOID RISK.—If the plaintiff could have avoided the injury by entering the cars at any time immediately preceeding the accident, the evidence showing that he had knowledge that there was room inside, he was bound to occupy the same. The plaintiff was bound to the exercise of ordinary diligence in guarding against danger and providing for his own safety, and even though he might not have known there was room in the cars for him, yet if circumstances were transpiring before him from which he might reasonably infer that such was the case, it was his duty to act upon such inference and ascertain its truth.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN A. JAMESON, Judge, presiding. Opinion filed, February 4, 1880.

Mr. B. C. COOK, for appellant; that amendments of pleadings by defacing them is not proper, cited Stanberry v. Moore, 56 Ill. 472; Teutonia Life Ins. Co. v. Mueller, 77 Ill. 22.

There was a fatal variance between the allegations and proofs: Ill. Cent. R. R. Co. v. McKee, 43 Ill. 119; T. W. & W. Ry. Co. v. Foss, 88 Ill. 551; C. & A. R. R. Co. v. Howard, 38 Ill. 414; Camp Point Mfg. Co. v. Ballou, 71 Ill. 417; T. W. & W. Ry. Co. v. Morgan, 72 Ill. 155; Ry. Co. v. Beggs, 85 Ill. 81; T. W. & W. R. R. Co. v. Jones, 76 Ill. 311.

Where amendments change the issues after the jury are sworn, they should be re-sworn to try the case: Kestler v. Raymond, 10 Ind. 200; Miles v. Vanhorn, 17 Ind. 245.

An amendment which changes the issue should not be allowed after the evidence and arguments are closed: Hoot v. Spade, 20 Ind. 326; R. R. Co. v. State, 16 Ind. 456; Blazingham v. Blazingham, 34 Ind. 87; Holcraft v. King, 25 Ind. 332; Landry v. Durham, 21 Ind. 232.

A railroad company is not bound to provide seats for all passengers in cases of emergency. In such cases if there is standing room within the car, and a person voluntarily stands upon the platform, he does so at his own risk: Quinn v. Ill. Cent. R.

R. Co. 51 Ill. 495; R. R. I. & St. L. R. R. Co. v. Coultas, 67 Ill. 398; Goldstein v. C. M. & St. P. R. R. Co. 8 Reporter, 253; G. & C. U. R. R. Co. v. Rae, 18 Ill. 488; Wharton on Negligence, § 627.

Plaintiff was bound to use reasonable caution to prevent an injury; C. & A. R. R. Co. v. Randolph, 53 Ill. 510; P. C. & St. L. R. R. Co. v. Krouse, 30 Ohio St. 222.

The instruction that if plaintiff took position on the car by request of an employe of the road, he may recover, was improper because there was no evidence on which to base it: Herrick v. Gary, 83 Ill. 85; Bradley v. Parks, 83 Ill. 169; Reinbach v. Crabtree, 77 Ill. 182; Andreas v. Ketcham, 77 Ill. 377; Ind. & St. L. R. R. Co. v. Miller, 71 Ill. 463; American v. Rimpert, 75 Ill. 228.

Negligence is not to be presumed: Wharton on Negligence, § 421.

Messrs. Scates, Hynes & Dunne, for appellee; as to right to make amendments, cited Beesley v. Hamilton, 50 Ill. 88; Parmalee v. Fischer, 22 Ill. 212; Laber v. Cooper, 7 Wall. 565, Rev. Stat. 1874, 137; Smith v. Vanderburg, 46 Ill. 34; Cogshall v. Beesley, 76 Ill. 445; Ill. Cent. R. R. Co. v. Simmons, 38 Ill. 242; Lakebrink v. Bœhmer, 11 Chicago Legal News, 76.

Going to trial by consent without issues being made up, a judgment will not be reversed for want of them: Kelsey v. Lamb, 21 Ill. 559; Brazzle v. Usher, Breese, 35; Ill. Cent. R. R. Co. v. Simmons, 38 Ill. 242.

Defendant should have declined to receive more passengers than it had capacity to accommodate: G. & C. U. R. R. Co. v. Rae, 18 Ill. 488.

Bailey, P. J.  This was an action on the case, brought by Jeremiah Carroll against the Chicago and Northwestern Railway Company, to recover damages for a personal injury received by the plaintiff, as he claims, by means of the negligence of the servants and employes of the defendant. The injury was received on the 30th of May, 1877, while the plaintiff was being carried on one of the defendant's passenger trains

from Chicago to Calvary, a station situated about ten miles north of the defendant's depot at Chicago. The day was being observed as "Decoration Day," and a very large number of persons presented themselves to the defendant for transportation from Chicago to the two cemeteries situated respectively at Rose Hill, eight miles north of Chicago, and at Calvary.

The evidence shows that on Decoration Day the previous year, only about three thousand persons were carried over the defendant's road from Chicago to these two cemeteries. On the occasion in question, the officers of the company had made, as they supposed, liberal provisions for the accommodation of all who might wish to go, basing their estimate mainly upon the experience of the previous year; but as it turned out, a very much larger number than was anticipated came, and as a consequence, the cars were greatly crowded. Some sixty passenger coaches had been provided, each having seats for fifty-six or fifty-eight persons, and by returning a portion of them, and using them a second time, over one hundred coaches composed the trains actually run. It appears that six thousand persons in all, which was double the number of the preceding year, were carried.

The evidence shows that four trains were run during the forenoon, two of them being regular trains, and two extras. Which of the four was the one on which the plaintiff took passage, does not distinctly appear, except that at least one train, if not two, followed it. He seems to have reached the depot at about eight o'clock in the morning. At the time of his arrival, a large number of cars were standing in readiness, all of which were crowded with passengers when he got there.

After obtaining from the defendant a ticket to Calvary and return, he went to the cars and found them all crowded and packed full, even to the platforms. He thereupon remarked to a friend who was with him that they would have to ride on the platform, but as the day was fine, it would do them no harm, and so he took a seat on the steps of the platform of one of the cars, and remained there until the train reached Rose Hill. The train consisted of some forty-two coaches and two engines, and carried, as was estimated, from twenty-five hun-

C. & N.W. R. R. Co. v. Carroll.

dred to three thousand passengers.    From one-third to one-half
of said passengers were on their way to Rose Hill, and left on
arriving at that station.    As the cars were being started after
said passengers were discharged, the draw-bar at the rear end
of one of the cars near the center of the train pulled out so as
to break the train in two.    The platform on which the plaintiff
was sitting was in the rear of and immediately adjacent to the
disabled car, and the plaintiff and others about him, on hearing
the noise occasioned by the pulling out of the draw-bar, fear-
ing some accident, jumped off on to the ground.    At this time
no one was injured.    The plaintiff, instead of returning to the
car on which he had been riding, or of seeking some place inside
of that or some other car vacated by the passengers who had
left, got on to the disabled car.    On his direct examination he
claims to have done this for fear of being left behind, but on
cross-examination, he testifies that he does not know why he
took that car, only as he had a ticket, he had as good a right to
get on that as on any other car.    He admits that he knew that
the disabled car was about to be set out of the train and left
behind, and such must have been the fact, since it appears that
before starting, the employes in charge of the train notified
and required the passengers to vacate said car, so that it might
be left, and that in pursuance of such requirement, the passen-
gers, the plaintiff included, passed through to the next car in
front.

The evidence is conflicting as to the number of passengers
in the last mentioned car, after the disabled car had thus been
vacated, but there is evidence tending to show that it was very
much crowded, and that the plaintiff, who seems to have been
the last one to leave the other car, was only able to find stand-
ing room on the platform.    The forward section of the train
was thereupon run north a little distance to a switch, after
reaching which it was backed slowly down the side-track, and
before it came to a halt, the car to be set out was detached,
whereupon the usual signal was given to the engineer to stop.
Immediately thereafter, and as the disabled car had separated
from the train a few feet, according to the testimony of the
plaintiff and several of his witnesses, a jar or jerk of the train

of considerable violence was felt, and by means thereof, as the plaintiff claims, he was thrown from the platform down between the rails, and had one of his legs so crushed and broken as to require amputation, and also had one of his hands so injured as to permanently impair its use.

On the trial in the court below, the plaintiff recovered a verdict for $4,750, for which sum and costs, the court, after denying the defendant's motion for a new trial, rendered judgment for the plaintiff.

Complaint is made of various rulings of the court below in giving and refusing instructions to the jury. The questions thus raised we will now consider, as far as we deem them necessary to a proper determination of the case.

The second instruction given at the instance of the plaintiff was as follows:

"The court instructs the jury that if they find, from the evidence, that the plaintiff had purchased a ticket from defendant, over defendant's railroad to Calvary, on the 30th day of May, 1877, to be used on that day, it was the duty of defendant to provide safe and sufficient accommodations for the conveyance of said plaintiff."

The rule of diligence incumbent on the defendant is here stated too broadly. It should be observed that the only negligence complained of in the declaration to which this instruction can apply did not consist in furnishing cars in any degree defective or unsafe, but of failing "to furnish sufficient cars with seats therein for the accommodation of all its passengers, so that they might safely and comfortably ride therein."

Undoubtedly if the cars furnished had been defective in any particular which could have been obviated by the exercise of the highest care and diligence on the part of the defendant, and injury had resulted, the defendant would have been liable. But even here the instruction goes beyond the rule thus stated. It does not stop with requiring of the defendant all that human diligence and foresight can do, but requires that the cars furnished should be absolutely safe and sufficient, thus in effect making the defendant an insurer of their safety and sufficiency.

But we think it unreasonable to hold a railway company

bound under all circumstances to furnish a sufficient number of cars so that all who may apply for transportation may be furnished with seats. Unforeseen emergencies may often arise where the performance of such duty would involve impossibilities. Crowds of people of whom the company has had no notice, or crowds whose numbers exceed all reasonable anticipation, may unexpectedly present themselves; and the duty of being prepared on all such occasions to furnish cars and equipments sufficient to suitably and conveniently accommodate all who may wish to ride, would necessarily involve such a constant accumulation of the means of transportation at every point where any extraordinary number of people may, on any special occasion, present themselves as passengers, as would in all probability make the business of carrying passengers by railroad too expensive to be profitable. It is undoubtedly the duty of these companies to furnish suitable sitting accommodations for its ordinary number of passengers or even for an extraordinary number on reasonable notice. But where passengers apply for transportation in extraordinary and unexpected numbers, they should be held only to the exercise of such reasonable diligence in providing cars as may be consistent with the particular circumstances of each case. We think the view we have here taken is fully supported by the decision of the Supreme Court in Quinn, adm'x, v. I. C. R. R. 51 Ill. 495.

The instruction above recited, negatives the possibility of any exception to the rule requiring railroad companies to furnish sufficient accommodations for all their passengers. It seems to be based upon the theory that the sale to the plaintiff of a ticket vested in him an absolute right to safe and sufficient accommodations on the particular train on which he took passage, and that, too, irrespective of the number of persons who unexpectedly presented themselves for transportation on the same train. It should be observed that there is no evidence that the plaintiff either applied for or purchased a ticket specifically applicable to that train. The ticket was, by its terms, limited to that day, and not to any particular train. Four trains were run, and the ticket would have entitled him to a passage on either of the other trains as well as on that one.

It is urged by the learned counsel for the defendant, that the defendant might, in view of the unexpected number of passengers who presented themselves, have refused to sell tickets, or to admit passengers to its cars, beyond their reasonable seating capacity, and that it could in no other way escape the imputation of negligence for a failure to furnish suitable accommodations to all who were accepted as passengers. A rule somewhat analogous to the one here contended for, obtains in the case of common carriers of freight. It is doubtless competent for such carriers, when there is a sudden and unexpected influx of freights beyond their ordinary means of transportation, to refuse to receive more than they can reasonably transport. But it is held that where they receive freights and undertake to carry them, they cannot excuse a failure to transport and safely deliver, by alleging that the amount of freights received was beyond their means of transportation.

There is, however, a very broad distinction between the duties and liabilities of common carriers of freights and of passengers. The former are under an absolute duty to transport and deliver, from which, when once undertaken, nothing can relieve but the act of God or of the public enemy. The liability of common carriers of passengers is much more limited and qualified. The law enjoins a very high degree of care and diligence, it is true; but unless there is some failure in the exercise of such care and diligence, there is no liability for any injuries their passengers may receive.

Doubtless the defendant would have been justified in refusing to carry more than could be reasonably accommodated in the cars it had at command; but it was not bound so to do. If more than could be seated desired to ride, and were willing to stand in the aisles, or even on the platforms, we are unable to see how the defendant was guilty of negligence in permitting them to do so. Doubtless greater care was required in the running and management of a train thus crowded with passengers, but permitting it to be thus crowded, when there was no other means of transportation, was not of itself negligence.

It follows from the views we have already expressed that the following instruction asked on behalf of the defendant, and refused, should have been given:

C. & N.W. R. R. Co. v. Carroll.

"If the evidence in this case shows, on the occasion referred to, there was an excursion train started by the defendant to Calvary, not a regular train, and that there was an unexpected crowd, or extraordinary number of people not looked for, applied for passage, in such case it would not be negligence on the part of the defendant not to furnish cars sufficient to seat all that applied for passage. If, therefore, the plaintiff applied for passage under such circumstances, and that at the time of the accident there was room within the cars for him to have occupied, and that he voluntarily exposed himself to the danger of standing upon the platform, from which he fell and received the injury in question, in consequence of such exposure, his own negligence will be regarded as far greater than that of the defendant company, and no recovery can be had."

In some respects this instruction is inartificially drawn, but we think it states in substance the law applicable to the case. The rights of the parties must depend upon the condition of the train after it reached Rose Hill, and not upon its condition when it left Chicago. However crowded it may have been before reaching Rose Hill, it scarcely admits of question, that after discharging its passengers at that place, there was an abundance of vacant room inside the cars. The evidence shows without any material contradiction that from twelve to fifteen hundred passengers were thus discharged. Although up to that time the plaintiff may have been unable to obtain either sitting or standing room inside the cars, it was his duty to find a place inside at the first opportunity. The exodus of so many passengers could not have escaped his observation, and he admits seeing a large number pass out. He must have known that their departure had left sufficient room for him in the car on which he was or in some other car within a convenient distance. These facts were patent to ordinary observation, but he does not seem to have given the slightest attention to finding a place in the cars or to ascertaining whether it was practicable for him to do so.

The substance of the instruction is that under the circumstances supposed, it was not negligence for the defendant not to furnish sufficient cars to seat all the passengers and that if

at the time of the accident there was sufficient room for him inside the cars, and that he voluntarily exposed himself to danger by remaining on the platform, and received his injury in consequence of such exposure, he is guilty of such degree of negligence as should preclude his recovery, such instruction was clearly warranted by the evidence, and enunciated correct propositions of law applicable to the case.

Several instructions were asked on behalf of the defendant which were modified by the court and given to the jury as modified. The following is one of said instructions, the only modifications, we deem material being made by the insertion of the words in Italic.

It must be regarded as the settled law in this case, that if the plaintiff could have avoided the injury in question by entering one of the cars after the train reached Rose Hill, or at any time immediately preceding the accident, and the evidence shows that there was, *to his knowledge*, room for him to have occupied inside of one or more of the cars in such case he was bound on said occasion to occupy the same. It is therefore wholly immaterial whether there was room within the cars before the train reached Rose Hill, except to enable the jury to determine whether there was or was not such room after reaching Rose Hill.

Three other instructions of similar import were modified in the same manner. The purport of these instructions was that the plaintiff was bound to seek a place in the cars, only in case he actually knew before doing so that there was room for him there. We think that this was not a statement of the full measure of his duty. He was bound by law to the use of ordinary diligence and circumspection in guarding against danger and providing for his own safety. Even though he may not have certainly known that there was room in the cars, yet if facts were transpiring before him, or were otherwise brought to his attention, from which he might reasonably infer that such was the case, it was his duty to act upon such inference and ascertain its truth. He may have seen forty men pass out of a car without knowing absolutely that their departure left any room, as their places may have immediately been taken by others, but

if he saw that number pass out, it would manifestly be his duty to ascertain whether he could not get in. Facts which were reasonably sufficient to put him on inquiry were as operative in his case to compel action, as in the case of other men who are charged with the care of their own business affairs or with the guardianship of their own safety. We think that the modification of these instructions was clearly erroneous and had a manifest tendency to mislead the jury.

For the errors in the instructions above pointed out, the judgment will be reversed and the cause remanded for a new trial.

Judgment reversed.