## CHICAGO AND ALTON RAILROAD COMPANY
### v.
## THEODORE FISHER.

*Railroads—Injury to Passenger—Excursion—Extraordinary Demand —Notice—Evidence—Instructions.*

1. In an action against a railroad company to recover damages for a personal injury alleged to have resulted from the negligence of the defendant in failing to furnish sufficient accommodations for excursionists, it is *held:* That the verdict for the plaintiff is not well supported by the evidence; that evidence of the general understanding in the vicinity as to the crowd expected, and to the effect that printed invitations had been issued

and posters seen in public places, was improperly admitted to charge the defendant with notice; and that the court below erred in giving certain instructions.

2. Where passengers present themselves in extraordinary numbers for transportation, the carrier is only required to use reasonable diligence in furnishing accommodations in view of the special circumstances of the case.

3. Where a witness has been contradicted merely, evidence of his general character is inadmissible.

4. Questions of fact are to be determined by the jury. What is or is not negligence is such a question.

5. In the case presented, instructions touching the weight of the testimony of the witnesses were improperly given.

[Opinion filed February 21, 1889.]

Appeal from the Circuit Court of Menard County.

Mr. William Brown, for appellant.

Messrs. Cameron & Hughes and C. Nusbaum, for appellee.

It is no defense where a carrier is negligent, that the negligence or even the trespass of a third person contributes to the injury complained of. Easton v. Boston R. R., 11 Allen, 500; Angell on Carriers, p. 433, Sec. 521, note.

The contract of a carrier with his passengers is to provide for their safe conveyance, so far as human care and foresight will go. 2 Kent's Com. 600, 601; Sir Jas. Mansfield in Christie v. Griggs, 2 Camp. 79.

Proof that the plaintiff was a passenger, the accident and the injury made a *prima facie* case. When this was done the burden of explaining was on the carrier. Galena & C. U. R. R. Co. v. Yarwood, 15 Ill. 468.

In this case the defense that plaintiff voluntarily stepped off, obtained no credence, not the slightest even, with either of the juries who tried the case.

Carriers must have and keep their platform safe. Hutchinson on Carriers, Sec. 516, 517; McDonald v. Railroad, 26 Iowa, 124; Penn. R. R. v. Henderson, 51 Pa. St. 315.

The highest degree of care and diligence is the rule as to all carriers of passengers, and public policy demands that it

should not be reduced; nor do the cases show any tendency in the courts toward its relaxation, but, on the contrary, a disposition to increase its rigor, especially in its application to carriers wherever steam is employed as the motive power. Hutchinson on Carriers, Sec. 501, note.

While the carrier is not regarded as an insurer of his passengers' safety against every possible source of danger, he is bound to use all such reasonable precautions as human judgment and foresight are capable of, to make his passengers' journey safe and comfortab'e. Hutchinson on Carriers, Sec. 596; Goddard v. Ry. Co., 57 Me. 202.

If the carrier has not room for the passenger he should not contract to carry him, and if it be uncertain whether he will have the necessary room, he should make his contract conditional with reference to that uncertainty. Hutchinson on Carriers, Sec. 609; Great N. R. Co. v. Hawcroft, 8 Eng. L. & E. 362; Lafayette, etc., R. R. v. Sims. 27 Ind. 59.

A passenger who can not obtain a seat in a car is not guilty of negligence if he stand on a platform outside of the car. Nor can he be required to encounter the danger of going from car to car while the train is in motion in order to find a seat. Willis v. R. R., 34 N. Y. 670, and 13 Barb. 398; Colegrove v. R. R., 20 N. Y. 492.

Though riding on the platform of a moving car is ordinarily negligence in a passenger, yet if there be no room inside the car, and pay is received or a ticket taken up for the privilege of occupying such a position, it may amount to an invitation to ride in that place, and an implied assurance that it is a suitable place to occupy, and that he will, while there, be carried safely. 2 Rohrer on Railroads, 1103, 1104; Clark v. Eighth Ave. Ry., 36 N. Y. 135.

Nor is it necessarily negligence in a passenger if a part of the body protrudes from the car. C. & C. R. R. v. Pondrom, 51 Ill. 333.

The railroad company, as carrier, is under an implied obligation to have a safe road, with proper engines and cars, to employ persons of competent knowledge and skill to conduct their business and operate their trains, and are bound to use

the utmost care and diligence for the comfort and safety of their passengers, not only in the management of their trains, but likewise in all their subsidiary arrangements. 2 Rohrer on Railroads, 590–1.

The jury are the sole judges of the weight of the evidence, and of the credit to be given to each witness. Cohen v. Schick, 6 Ill. App. 280.

The instruction as to mere numbers, not necessarily determining the preponderance of the evidence, was correct. Gowen v. Kehoe, 71 Ill. 66 ; Meyer v. Mead, 83 Ill. 19.

WALL, P. J.    The appellee recovered a judgment against the appellant in an action on the case, in the sum of five thousand dollars.

The declaration contained three counts. The first alleged that on the 18th of August, 1886, the defendant ran an excursion train between Petersburg and Ashland, and plaintiff became a passenger thereon ; that on the return journey defendant negligently permitted the train to become overcrowded, and by reason thereof the plaintiff, while exercising due care, was, by the pressure of the persons on the platform and steps of the car, unavoidably crowded off and thereby injured. The second count substantially states the same condition of the car, and alleges that by reason thereof plaintiff was unable to stand on the platform, and unavoidably fell off and was thrown against a heavy truck, etc.

The third avers the defendant had notice that an unusual number of persons would take the train, and advertised it would carry all persons at reduced rates; that plaintiff became a passenger, that defendant failed to provide adequate room for the passengers, and suffered the train to be overcrowded, and also carelessly permitted a heavy truck to be on the depot platform at Petersburg, directly in the way of persons who might alight from the train, and that by reason of the overloaded condition of the train, the plaintiff, while exercising due care, was thrown from the car and was dragged against the said truck, whereby he was injured.

The occasion was a soldiers' reunion at Ashland, which is the

second station south of Petersburg. The defendant sold excursion tickets from the latter to the former station and return, but it does not appear that extra cars were provided, and the passengers going from Petersburg to Ash'and were very much crowded.

On the return the crowd was great, so much so that the platform and isles were filled on some, if not all the cars, except the sleeper and dining car. At Tallulla, a station between Ashland and Petersburg, about one hundred got off, and the train proceeded to Petersburg. The plaintiff made an effort at Ashland to get on the front end of a coach, probably the second from the baggage car, and finding that coach was filling rapidly, went forward and got on the front end of the smoker where, as he states, he remained, because he could see no chance to get a seat inside. This platform was crowded, as was the platform of the baggage car in front of him.

He sat on one of the steps a part of the time and stood a part of the time. As the train approached Petersburg he rose to his feet, holding with one hand to the railing of the car and with the other to the railing of the car platform. He does not know, as he states, how he got off, but he was seen to be running along on the depot platform holding on to the car until he struck against the truck, which was standing near the track with a trunk upon it, when he was thrown down and very seriously hurt. He was unconscious for several days, and though no bones were broken, he received injuries which confined him to his room for six weeks, and for which he had not fully recovered at the trial.

The train consisted of three passenger cars, besides the sleeper and dining car. The three passenger cars were overcrowded, and though about one hundred persons alighted at Tallulla, there was on the forward car, where plaintiff rode, no apparent relief, according to the testimony of some of the witnesses, though, as to this, there is contradiction. The theory of plaintiff is, that as the train whistled for Petersburg there was a rush of persons to get out, and that he was thus pushed off. It is remarkable that no witness swears that he

was pushed off, the nearest approach to such proof being found in the testimony of McHenry, who swears that he was standing next to plaintiff, and that he felt a pressure from persons back of him, and that he was pressing somewhat against the plaintiff; that he felt plaintiff give way, and as he looked around, he saw plaintiff strike the truck.    He did not see him as he left the car, and he evidently does not know how he left, for he did not look around until just as plaintiff struck the truck.

According to the great weight of the proof, and indeed according to all of it on the point, the plaintiff ran along the platform a considerable distance, not less than sixty feet, before he reached the truck.

Some of the witnesses described him as holding on to the car with both hands—though the most of them say with one, the right—he being on the west side of the car and going north.

It was manifestly incumbent upon the plaintiff to satisfy the jury that he was unavoidably forced from the car by reason of the overcrowded condition thereof, and it was perhaps the chief point of inquiry to ascertain whether he left the car of his own volition or by reason of the pressure from the crowd.

As already stated, but one witness, McHenry, testifies that there was any such pressure as might have forced him off, and that pressure was not such as to materially change the position of the witness himself.

All the other testimony is to the effect that he voluntarily stepped off, or that the witnesses did not see him in the act of passing from the car, and they were unable to say what induced his going.    Some ten or twelve witnesses testify that he stepped off as any person would in alighting from a train, holding on with his right hand and placing his left foot on the depot platform ; and that he then ran along, holding on, until he came to the truck.    Other witnesses did not see him until he was off, running along.

One witness for the plaintiff, Kleinan, who was sitting in a bus on the other side of the depot, says he saw

him come off backward, holding on with both hands to the railing, and going along in this mode, sideways, taking steps of ten or fifteen feet at a time until he reached the truck, but he is not well corroborated as to the attitudes of plaintiff, and was probably in error as to this.

There was testimony to the effect that plaintiff said that he intended to get off ahead of the crowd, so that he could get into the bus and ride up town. Four or five persons so testified, and that after he had partially recovered he accounted for his misfortune in the same way, and admitted that he had acted incautiously in trying to get off while the train was in motion. He denies these statements and admissions, but the testimony comes in such a form as that it might ordinarily be expected to receive credit from the jury; though, of course, there is such contradiction, as that if the issue rested wholly on these statements and admissions, it would hardly do to say that the finding of the jury is without warrant.

Taking the evidence as a whole, as it appears in this record, we are strongly impressed with the belief that the plaintiff was not pushed or forced from the train, but that he stepped off, miscalculating the speed of the train, and finding he was going faster than he supposed, and to avoid falling, he held on to the car until he collided with the trucks. Indeed, we may say there is really no conflict in the evidence, since all the proof in the case may be harmonized consistently with this theory. We do not forget that in the testimony of the various witnesses there is more or less discrepancy on some points. They do not all agree as to which car he was on, nor as to his position; but such discrepancies will be noticed invariably among witnesses who have not been trained. Men do not all see alike, nor is it usual that all of several witnesses see the entire transaction. Some will see more, and when the act inquired of occupies but a short space of time, some will comprehend more than others, and from the testimony of all, differing though they may in details and minor particulars, the whole truth will appear. The proof being in this condition, and there being no positive evidence that the plaintiff was forced from the train, unless it may be found in the testi-

mony of McHenry, it is difficult to see how the jury, if properly advised of the law, could have reached the conclusion they did.

We are not to be understood as saying, however, that we would reverse the case, were there no errors in the rulings upon evidence and instruction.

Appellant urges that the court erred in permitting proof as to the position of the truck, as it was usually placed, and a statement of the difference in distance between that position and the position at the time in question. We see no valid objection to this proof.

It is insisted the court erred in permitting proof of the general understanding in the vicinity, as to the crowd that was expected at Ashland, and that printed invitations had been issued by a committee to all ex-soldiers, and that printed posters had been seen in public places about the town of Petersburg.

The object of this evidence, of course, was to bring knowledge to the company of the extent of the crowd to be expected.

We think it was too remote, and should have been excluded, unless it was also shown that the company, or its agents, knew of the invitations or the posters.

The company, however, must have known of the reunion, for we find its agents were selling excursion tickets at special rates, and the real point in this respect is whether it had such knowledge (or notice that would have led to knowledge) of the numbers likely to go, as to require preparations that were omitted.

The proof thus admitted was not of the definite character that would bring such notice; first, because the company was not shown to know of the posters etc., and second, it does not appear what they contained or indicated. It can hardly be said that a railroad company is bound to keep track of such advertisements, and make arrangements accordingly. It may well suppose that when special rates for excursions are desired, it will in some more certain and definite way receive information of the number of persons likely to go, and of the extra accommodations required; if it is not justified in relying

upon such information, then it is subject to the duty, at its peril, of forming a proper opinion based on newspaper rumor, public advertisements and the like, which would be unreasonable.

It is urged the court erred in refusing to permit the appellant to support one of its witnesses, Mrs. Stewart, by proof of general character.

This witness had testified to declarations made by plaintiff as to the manner in which he received his injury, and had been contradicted by other witnesses, who were present at the conversations, or some of them referred to by her. She had not been impeached by proof of bad reputation. She had been contradicted merely. It was not proper to support her by the offered proof. The authority cited in Greenleaf does not sustain the objection.

The appellant urges that it was error to give the following instructions at the instance of the appellee.

" 1.  That the law requires of a common carrier of passengers for hire, that such carrier shall exercise extraordinary care, and (consistent with the means and mode of locomotion employed) the carrier shall do everything reasonable and practicable that human foresight would suggest, to guard against and prevent injury to the passenger, and shall not omit to do anything reasonable and practicable which human foresight would suggest ought to be done to guard against and prevent injuries to the carrier's passengers.

" 2.  The degree of care required by our law from a carrier of passengers for hire, is not common prudence or ordinary care, but is what is known as the highest degree of care, and for any omission or failure to exercise that highest degree of care, which causes an injury to the carrier's passenger, such carrier can be held liable."

The only negligence alleged against the railroad company aside from leaving the truck so near the track, was the failure to provide accommodation for the unusual number of passengers on the occasion in question, and these instructions were understood to refer to such failure. As applied to such matters as are under the exclusive control of the carrier, *e. g.*, the

C. & A. R. R. Co. v. Fisher.

construction of road bed, bridges, cars, engines and other appliances, the rule announced is correct; but with reference to the duty of furnishing room for passengers in extraordinary numbers, it is too broadly stated.    When an unusual, extraordinary demand for transportation occurs, the carrier should be held only to such diligence as may be reasonably exercised in view of the peculiar circumstances of the case.   C. & N. W. R. R. Co. v. Carroll, 5 Ill. App. 201; Quinn v. I. C. R. R. Co., 51 Ill. 495.

In determining what was reasonable diligence, it would be proper to consider the notice had by the carrier of the probable requirement, the time in which it might act and the means at hand.    Perhaps other considerations might be involved.

Under the rule stated in these instructions, the jury would necessarily find there was negligence, for it was certainly possible, by the exercise of "the highest degree of care," and by doing "everything reasonable and practicable that human foresight would suggest," to have furnished the requisite room.

The carrier should not be held to so strict a rule in regard to matters over which it has no control.    It was impossible to know with certainty how many extra passengers there would be, many changing their minds at the last moment one way or the other, and where the power of control is imperfect or wanting, the duty can not be absolute.

It must be the rule, therefore, that the duty is relative, and depends upon the special circumstances of the case.

The same measure of diligence would not be required in every instance, nor is there an absolute duty of providing for all who may come in any case.    It does not appear what notice the company received in this instance of the extra number to be provided for, and these instructions must have had an important effect upon the jury.

Objection is taken to the following instructions given for plaintiff.

"10.    That the preponderance of evidence does not depend entirely upon the number of witnesses testifying on either side of the case.

"11. The testimony of one credible witness may be justly entitled to more weight and credit than the testimony of many others, if the jury, as to other witnesses, have reason to believe, and do believe from all the evidence, that such other witnesses have knowingly testified untruthfully and are not corroborated by other credible evidence, or by circumstances proved in the case."

The last instruction, taken in connection with the 10th, was quite significant when applied to the evidence, and of course would be taken to refer to the supposed conflict between the testimony of McHenry, for the plaintiff, and a large number of witnesses for defendant. The latter clause of the last has no foundation in the evidence as we read it, and as the jury may have inferred that the court supposed there was foundation for it, they were likely to be misled by it. The instruction should have been refused.

The following, given for plaintiff, is objected to:

"12. Even if the jury believe, from the evidence, that there was ample room for Fisher in the Pullman sleeper, yet if you further believe from the evidence the sleeping car was closed to passengers when at Ashland; and that Fisher took as good a place to ride as he reasonably could under all the circumstances at the time, and that he had no notice or knowledge of the fact that the sleeper was opened for the use of the excursionists, then he is not chargeable with negligence for continuing in such place so taken by him."

It is a familiar rule that the jury should be left free to determine questions of fact, and that what is or is not negligence is such a question.

Whether, under a given set of circumstances, one should, in the exercise of due care, do or refrain from doing a particular thing, is for the jury.

Technically, at least, the defendant had the right to take the opinion of the jury, whether the action referred to was negligent, under the circumstances, and the instruction was faulty; but in view of the facts involved, we would not be inclined to reverse if the record contained no other errors.

Counsel have urged upon us as erroneous the action of the

court in modifying a number of instructions asked for defendant. After a very careful examination of the instructions as modified, in connection with those given as asked, we deem it necessary to say merely that we find no material error in respect thereto. For the reasons given the judgment will be reversed and the cause remanded.

*Reversed and remanded.*