HENRY GLASSCOCK, Respondent, v. MISSOURI, KANSAS & TEXAS RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, December 4, 1899.

1. **Railroads: FENCING STATION GROUNDS: JURY QUESTION: EVIDENCE.** A railway company is not required to fence its tracks and put in cattle guards at necessary switches when to do so would endanger the safety of its employees, and the extent of such switches is a question for the jury, and the evidence in this case was sufficient to send the issue to the jury.

2. ———: ———: CATTLE GUARDS BETWEEN SWITCHES: IN-STRUCTIONS. Whether it is proper to construct cattle guards be-tween switches depends upon circumstances, and an instruction should not declare such construction unlawful of itself.

Appeal from the Randolph Circuit Court. *Hon. J. A. Hockaday*, Judge.

AFFIRMED.

*Geo. P. B. Jackson* for appellant.

(1) The unfenced portion of defendant's track where plaintiff's animal passed upon the same and was struck, was used for switching and passing trains at Holliday station, and defendant was not required to fence at that place. Pearson v. Railroad, 33 Mo. App. 543-546; Jennings v. Railroad, 37 Mo. App. 651; Cox v. Railroad, 128 Mo. 362-371. (2) The evidence was uncontradicted that the safety of employees re-quired that the track should remain unfenced. The demurrer to the evidence should therefore have been sustained. For the same reason the judgment should now be reversed. Jen-nings v. Railroad, *supra*. (3) The instructions given by the court were inconsistent and misleading. Those given at the instance of defendant excused the defendant from fencing where to do so would endanger the safety of men employed in handling trains passing at that station, while plaintiff's instructions denied this exemption, and limited the excuse from fencing to the special needs of the business with the public at that particular station.

*Wight & Woods* and *A. H. Waller* for respondent.

(1) It was defendant's duty, under the evidence in this case, to fence all that portion of its uninclosed track east of the town limits for the reasons: First, because at said point said track ran through respondent's farm with meadow land on one side and pasture land on the other and defendant was

required by law to so fence.   Second, because no part of the land uninclosed lying east of the town limits was used or could have been used or was necessary for the transaction of business at Holliday station.   Third, because this issue was submitted to the jury upon practically uncontradicted testimony and the issue found against appellant.   Russell v. Railroad, 26 Mo. App. 368; Johnson v. Railway, 27 Mo. App. 385; Straub v. Eddy, 47 Mo. App. 192; Chouteau v. Railway, 28 Mo. App. 559; Vanderworker v. Railway, 51 Mo. App. 168; Rozzelle v. Railway, 79 Mo. 350; Kinion v. Railway, 39 Mo. App. 575; Emmerson v. Railway, 35 Mo. App. 625.   (2)   Appellant's second contention is untenable because the evidence not only fails to show "that the safety of employees required that the track should remain unfenced" but on the contrary does show that the east cattle guard could have been removed west to the town limits and the track fenced to that point, and that thereby the danger to employees would have been materially lessened. And also for the further reason that this issue was submitted to the jury and the finding of the jury was against appellant. Cox v. Railway, 128 Mo. 371.

ELLISON, J.—This is an action to recover double damages on account of defendant having killed plaintiff's jennet by running against her at a place on defendant's railway where it runs through uninclosed lands and where, as plaintiff charges, it was defendant's duty to fence.   The judgment in the trial court was for plaintiff.

The accident happened inside of the switch limits at Holliday station but outside of the corporate limits of that town.   Defendant is liable to the action unless it was excused from fencing at the place of accident.   Its defense is based on the idea that the whole of the switch limits established by it was necessary for the transaction of its business with the public at the station, and especially its necessary business generally in the operation of its road.   The cases of Pearson

v. Railway, 33 Mo. App. 543, and Jennings v. Railway, 37
Mo. App. 651, are relied upon.

Those cases establish the proposition that a railway com-
pany is not required to fence its track and put in cattle guards
at necessary switches when, to do so, the safety of its employees
in switching its cars would be endangered. They establish
the further proposition that the space reasonably necessary
for these purposes is a question to be determined by a jury and
is not left to the discretion of the railway company. The
latter proposition was submitted to the jury in this case and
the question is presented whether there was evidence to sus-
tain the verdict that it was not.

At the place where the animal was killed the road runs
east and west through plaintiff's farm, he having a meadow
on the south and a pasture on the north of the tracks. A
public road, however, runs parallel with the railway on the
north side and thus prevents the pasture from coming up to
the right of way. The animal doubtless escaped from the pas-
ture out onto the public road and thence onto the track where
it was unfenced. The switch limits lack but a few feet of
being one-half mile in length, the station being about 860
feet from the west end and the place of accident being inside
the switch limits, about ninety feet from the east end. While
the east end was used yet the principal part of the use made of
the tracks was up between the west end and the station. The
tracks inside the limits consisted of the main track and two side
tracks connected therewith, one called the passing track, used
principally for passing trains; the other called the house track
and used mostly for business connected with freight.

There were two cattle guards maintained by defendant,
one about 300 feet west of the west end of the switch limits
and the other down about fifty feet beyond the east end;
that is, in coming into the switch limits from the west trains
passed over a guard 300 feet distant from the head of the
switch and in coming in from the east they passed over a guard

fifty feet from the head of the switch. It is apparent that considering the place where the station and switches were located the switch limits were quite lengthy. The side track known as the passing track was nearly 2,500 feet long, a space sufficient to hold several freight trains of ordinary length. In this connection it is fair to consider in support of the verdict that the cattle guard at the east end could have been placed several hundred feet west of where it was placed, thus permitting the road to be fenced a long distance inside the point where the animal was killed. There was evidence given from which a reasonable inference could be drawn that this would not have endangered the safety of defendant's servants as much as to allow the guard to remain where it was at the time of the accident. As located in the evidence this guard was only fifty feet east of the end of the switch limits while it could have been placed several hundred feet further west and yet been several hundred feet from the head of any of the different switches. In other words, its proximity to a switch head would have been removed many fold and the danger to employees thereby greatly lessened. In our opinion there was sufficient evidence upon which to base the verdict.

Objection is made to plaintiff's instructions in that it is claimed they excluded from the jury a consideration of defendant's business in operating its road generally at that point and limited the inquiry alone to the business of the public with the company at that point. The objection certainly can not apply to the first instruction; the part referred to being as follows: "Unless the jury further believe and find from the evidence that the cattle guards could not have been located at any point west of the place where the jennet strayed upon the track and east of the public road or street and the fences extended thereto without rendering it more dangerous to the lives and limbs of defendant's agents or servants in doing

switching and other work at Holliday station." This evidently applied to all of the business of the company.

That portion referred to in the second instruction is as follows: "* * * and that in determining this question you must take into consideration the nature and situation of the switch and the use made of it by the defendant and the public in connection with the business at the station." When considered in connection with the first it is apparent that no one would understand that the jury was to confine their consideration to the business the public had with the defendant at that point. A part of "the business at the station" was switching and passing trains and such business was not excluded from the minds of the jury by the two instructions.

Complaint is also made that the court struck out five lines of defendant's second instruction. These lines declared it to be unlawful for, and that the company would not be permitted to construct cattle guards between the ends of switches. Passing by the question whether it was proper to declare that the building of cattle guards between switches was of itself "unlawful," we are confident that no such breadth of statement should have been used. Whether it is proper or prudent to construct a cattle guard between switches in many instances would depend on a variety of circumstances. It may be conceded that usually it is not done, but that affords no ground of support for the broad statement that under no circumstances could it be done.

We do not consider that other points of objection materially affected the merits of the action and we shall affirm the judgment. All concur.