WILLIAM M. HOLLAND, Respondent, v. ST. LOUIS AND SAN FRANCISCO RAILROAD CO., Appellant.

Kansas City Court of Appeals, February 15, 1904.

1. **PASSENGER CARRIERS:** Negligence: Demurrer to the Evidence. A carrier is responsible for all injury to its passengers from even slight negligence; and on a review of the evidence it is held the circumstances of the case raised the question as to the credibility of defendant's witnesses, whose evidence tends to explain away the presumption of negligence raised by the injury to the passenger, and therefore a demurrer to the evidence was properly overruled. Conflicting authorities noted.

2. ———: ———: Leaving Seat: Instruction. A passenger has the right to leave his seat in a railroad car temporarily for any legitimate purpose provided he does not expose himself to danger thereby, and the instruction that if the passenger after being furnished a seat voluntarily left it and was standing when injured by being thrown down, he was guilty of contributory negligence, is properly refused.

3. ———: ———: Instruction. An instruction set out in a petition relating to a discoverable defect in the machinery is held sufficiently broad to impose upon the defendant the burden to disprove any kind of negligence.

4. ASSUMPTION OF RISK: Instruction. It is not the magnitude or the insignificance of a cause producing an injury which regulates the liability of the carrier, but it is his want of care; and an instruction that if the concussion of colliding cars was not greater than the usual concussion incident to the operation of mixed trains, then the plaintiff was held to assume the risk of such concussion is condemned.

5. APPELLATE PRACTICE: Abstract: Affidavit: Order of Appeal. An affidavit need not be set out in the abstract where the copy of the record entry recites that an affidavit for the appeal had been filed and an appeal had been allowed.

Appeal from Dade Circuit Court.—*Hon. H. C. Timmonds,* Judge.

REVERSED AND REMANDED.

*L. F. Parker, E. P. Mann* and *J. T. Woodruff* for appellant.

(1) Defendant's demurrer at the close of plaintiff's evidence should have been sustained and the instruction directing a verdict in its favor should have been given. Erwin v. Railroad, 94 Mo. App. 289; Hartley v. Street Railway, 148 Mo. 141; Scott v. Dock Co., 10 Jur. N. S. 1108; Guffy v. Railroad, 53 Mo. App. 469; Wait v. Railroad, 165 Mo. 612; Hite v. Street Railway, 130 Mo. 133; Holt v. Railroad, 84 Mo. App. 443; Frohriep v. Railway, (Mich.) 91 N. W. 748; Claf-

Holland v. Railroad.

lin v. Dodson, 111 Mo. 20.  (2)  The court erred in not sustaining the demurrer which the defendant interposed at the close of the whole case and in refusing to instruct the jury to find for the defendant.  See authorities cited above.  Hite v. Street Railway, 130 Mo. 140; Railroad v. Talbot, 78 Ky. 621; Railroad v. Turner, 41 Ark. 163; Railroad v. Basham, 47 Ark. 322; Reichenbach v. Ellerbee, 115 Mo. 595; Payne v. Railroad, 136 Mo. 106; Railroad v. Rudolph, 38 S. E. (Ga.) 328; Railroad v. Wall, 80 Ga. 202, 7 S. E. 639.  (3). The court erred in refusing instructions numbered 1, 2 and 3 requested by defendant.  Tuley v. Railroad, 41 Mo. App. 436; Railroad v. Leftwich, 117 Fed. 128; Freeman v. Pere Marquette Co., 91 N. W. (Mich.) 1021; Smotherman v. Railroad, 29 Mo. App. 265; Auftenberg v. Railroad, 132 Mo. 566; Erwin v. Railroad, 94 Mo. App. 289.  (4)  The court erred in giving instructions numbered 1, 2, 3, 4 and 5 on part of plaintiff.  Tuley v. Railroad, 41 Mo. App. 436; Prior v. Street Railway, 85 Mo. App. 367; Grocery Co. v. Sanders, 74 Mo. App. 659; Hirchner v. Collins, 152 Mo. 397; Goetz v. Railroad, 50 Mo. 472; Clay v. Railroad, 17 Mo. App. 629; Moore v. Railroad, 126 Mo. 178; Thomas v. Babb, 45 Mo. 384; Moore v. Streegel, 50 Mo. App. 308; McNamee v. Railroad, 135 Mo. 447; Cyclopedia of L. & P., 597; Lumber Co. v. Moss Tie Co., 87 Mo. App. 178; Herbert v. Mound City B. & S. Co., 90 Mo. App. 317; Greenleaf on Evidence (16 Ed.), 158; Railroad v. Canman, 52 Ark. 517; Shinn v. Tucker, 37 Ark. 589; Railroad v. Harwood, 80 Ill. 91; Rolling Mills v. Morrisy, 18 A. & E. Railway Cases 48; Railway v. State, 95 Md. 637; Railway v. Fry, 131 Ind. 319; Ballou v. Railroad, 54 Wis. 257; Baldwin v. Railroad, 50 Iowa 680; Railroad v. Flannigan, 77 Ill. 365; Cohn v. McNaulta, 147 U. S. 238.

*D. P. Dyer,* for respondent.

(1)   It is well settled by the decision of appellate courts of this State that plaintiff herein by showing the breaking into of the train upon which he was a passenger and the consequent collision of the cars, resulting in his injury made out a prima facie case of negligence against defendant, and thus cast upon it the *onus* of relieving itself from liability by showing that the injury was the result of an accident which "the utmost skill, foresight and diligence could not have prevented." Hipsley v. Railway, 88 Mo. 348; Furnish v. Railway, 102 Mo. 438; Jackson v. Railway, 118 Mo. 224; Clark v. Railway, 127 Mo. 197.   (2)   There is, we submit no foundation whatever for appellant's contention that the prima facie case thus made out by plaintiff was "explained away" by the testimony of defendant's brakeman Gott, who was called as a witness in behalf of plaintiff.   (3)   And we may say here that in failing to continuously and carefully inspect these appliances whose faithful operation was so essential to the safety of passengers, the railroad company was grossly derelict in its duty.   Furnish v. Railway, 102 Mo. 438; Guthridge v. Railway, 94 Mo. 468; Hipsley v. Railway, 88 Mo. 348; Wolfe v. Campbell, 110 Mo. 114; Schroeder v. Railway, 108 Mo. 322; Gibson v. Zimmerman, 27 Mo. App. 90; Rayl v. Krelick, 74 Mo. App. 245; Cleveland Co. v. Ross, 135 Mo. 101; Seehorn v. Bank, 148 Mo. 256.   (4)   Instruction No. 1 was properly refused for several reasons.   Choate v. Railway, 67 Mo. App. 105; Payne v. Railway, 129 Mo. 405; Spillane v. Railway, 135 Mo. 414.   (5)   Instruction No. 2 was vicious, for several reasons.   (6)   Instruction No. 3 was properly refused as not being applicable to the case.   (7) Plaintiff's instructions were proper.   See also Kirchner v. Collins, 152 Mo. 394, to the same effect.   Instructions Nos. 2 and 3.   Shuler v. Railway, 86 Mo. 618, 623.

BROADDUS, J.—This is an action by plaintiff to recover damages for injuries alleged to have been received December 24, 1902, while a passenger on one of defendant's trains consisting of four freight cars and a passenger coach, making what is known as a ''mixed'' train. The coach was a combination car divided by a partition, one part being used for passengers and the other for baggage.. According to the plaintiff, this car on the day of his alleged injury was crowded with passengers to the extent that he was unable to obtain a seat, and while he was standing in the aisle of the coach, which was attached to the rear of the train, he was suddenly thrown against a stove and onto the floor because of a violent jar of the car, whereby he was seriously injured.

The testimony showed that the engineer separated the train within about a mile of Greenfield, taking the two front cars to that town and returning for the remainder. Attaching the engine to these latter cars he started forward, whereupon the coupling between two of the cars became detached. Again connecting the cars, he proceeded forward something like a half a mile when the same coupling became detached, again separating the train, the front part of which continued on a distance of 30 or 40 yards when it was stopped by the automatic action of the brakes about the distance named in advance of the detached rear section. These latter cars continued to move forward until they collided with the then stationary front cars with much force, throwing plaintiff against the stove and onto the floor of the passenger coach and causing his injuries complained of.

After testifying to substantially the foregoing facts, J. W. Gott, a brakeman on the train, introduced as a witness by plaintiff, further testified that the cars which separated, as aforesaid, had been attached by what is known as automatic couplers, and air brakes were used.

After describing the couplers he stated that they were held together by means of a lever which is moved to unfasten them. And when asked if he had examined the couplers in question after they became detached, he said: "Well, I didn't make any real close examination because I couldn't see any reason why they should have come apart, you know, but of course if there had been anything very much wrong with the coupler I would have noticed it without going under the car to make a close examination, but I couldn't see anything." He then further stated that trains using such couplers often become uncoupled, but that, ordinarily, when equipped with air brakes, as here, when the air brake line is parted the brakes are automatically set on the entire train and both sections come to a stop. He could not, however, give a reason why the rear section of the train did not stop in this instance as did the front section after the train separated.

The defendant's evidence tended to show that the cars were equipped with the latest and most approved automatic couplers and air brakes; that they were all in good order and that an examination subsequent to the accident disclosed no defects in them. It was admitted that the two cars that came uncoupled belonged to another road.

At the close of plaintiff's case and also after all the evidence had been heard, the defendant asked an instruction directing the jury to return a verdict in its favor, both of which the court refused. This action of the court is assigned as error. As defendant's evidence did not tend to strengthen plaintiff's showing, it will only be necessary to consider whether under all the evidence plaintiff was entitled to recover.

The law is that a railroad company engaged in the carriage of passengers, "is required so far as it is capable by human care and foresight to carry them safely, and it is responsible for all injuries to its passengers from even the slightest negligence on its part."

And, "when a passenger suffers injuries received in the breaking down or overturning of the coach in which he is riding, a prima facie presumption arises that such casualty was caused by negligence on the part of the carrier, and the burden is on the latter to repel such presumption and to show that the injury was the result of inevitable accident or some cause which human precaution and foresight could not have averted." Clark v. Railway, 127 Mo. 197; Furnish v. Railway, 102 Mo. 438.

The defendant contends that the uncontradicted evidence of its employees to the effect that upon inspection after the occurrence in question it was found that both the air brake and coupling were in good condition, overturned plaintiff's prima facie case, and that the jury should have been so instructed. In Gannon v. Gas, 145 Mo. 502, the holding was: "The plaintiff is entitled to have the jury determine the credibility of the testimony offered, even though he offer nothing to contradict that of defendant. Nor can the court assume as a matter of law that the testimony is true, satisfactory or convincing to the jury simply because no one by words contradicts what has been uttered." But the decision in that case seems to be, if accepted in its broadest sense, in conflict with other decisions of the Supreme Court and the Courts of Appeal. Downey v. Railway, 94 Mo. App. 137; Glasscock v. Railway, 82 Mo. App. 146; Hite v. Railway, 130 Mo. 140; May v. Crawford, 150 Mo. 527. But we do not think it material whichever way the rule may be so far as this case is concerned. It is true, there were no witnesses called by the plaintiff to contradict defendant's evidence that the air brakes and coupling were in good order upon inspection; but there were circumstances that tended to contradict such evidence— or, rather, the circumstances developed by plaintiff's testimony did not accord with defendant's evidence, and which created an issue as to the credibility of witnesses—in that the automatic coupling in ques-

tion as shown by the testimony is a contrivance almost universally adopted by railroad companies for security and safety; and its merits are so highly esteemed that the congress of the United States has required that they be used by all companies doing an interstate business.    It being one of the most secure and safe appliances known, it seems strange to the ordinary mind that it should have uncoupled twice in the same vicinity and in so short a time if it was in good working order and without any observable defects.    That such a coupling would become detached at times and without any apparant cause, may have been true but that it could frequently do so if properly inspected and kept in repair and good working order is incredible.    It would belie its reputation.    And the jury after having inspected the coupling, heard it described and how it operated, might well have hesitated in believing the testimony of defendant's witnesses as to its unreliability. And notwithstanding that brakeman Gott testified that after the breaking apart of the train he could see nothing wrong about the coupling, this did not preclude plaintiff, even though Gott was his witness, from having his case submitted to the jury if other evidence justified. A party to a suit is not estopped from showing or relying on a different state of facts from those detailed by his witness.

Instruction number one asked by defendant and refused by the court was to the effect that if plaintiff after entering the car was furnished with a seat and voluntarily left it and was standing when thrown down by the jar, and that his so standing contributed to his injury, he could not recover.    This instruction was properly refused.    It is true plaintiff was provided with a seat when he entered the car, but he afterwards got up and went into the baggage department of the car and when he returned someone had taken his seat; and as there was none other unoccupied he was compelled to stand.    It is hardly necessary to offer any reason to

satisfy ordinary intelligence that a passenger has the right to leave his seat in a railroad car temporarily for any legitimate purpose, provided he does not expose himself to danger thereby.

Defendant's instruction number two, also refused, was as follows: ''If you believe from the evidence that defendant's cars were equipped with automatic couplers and such were in good order, and that the train was equipped with air brakes and they were in good order, and that no defects could be discovered in either the brakes or the couplers by careful examination, and that cars of the kind do become uncoupled when handled in the manner that the cars in question were, and that these cars became uncoupled without apparant cause, or discoverable defect, then the defendant is not liable,'' etc. The plaintiff urges that this action of the court was justified upon the ground that the evidence tended to show that the platform of the cars that became detached were of unequal height, which might have accounted for their becoming uncoupled. Without entering into a discussion as to whether a railroad carrier would be justified in refusing to receive the cars of another carrier because of a difference in their height, respectively, we are of the opinion that the instruction in its scope would not only include that circumstance but every other that would go to show negligence. The words, ''and that these cars became uncoupled without apparent cause or discoverable defect,'' imposes the burden upon the defendant in its most comprehensive language to disprove every kind of negligence.

Instruction number three was rightfully refused. It is as follows: ''Although you may believe from the evidence that the train in question broke into, and that the two parts thereof collided and caused a jar or concussion, yet if such jar or concussion was not greater than the jars or concussions usually incident to the operation of mixed trains, then the plaintiff must be held to have assumed the risk of such jar or concussion, and

the defendant is not liable,'' etc. In the one instance the risk would be assumed but it does not necessarily follow that because the jar or concussion are of equal force in both instances that the rule governing one should be applied to both. It is not the magnitude or the insignificance of the cause that produces the injury, which regulates the liability; but want of care.

Other instructions given at the instance of plaintiff are unobjectionable. Those given by the court on its own motion seem proper—if not they are not subject to attack as no exceptions were made to them at the time.

Respondent insists that the appeal should be dismissed for the reason that the affidavit for an appeal is not found in the record. It is true that the affidavit is not in the abstract before the court, but a copy of the record entry of the court recites that an affidavit for an appeal had been filed and a copy of the entry recites that an appeal had been allowed. The recitation of the record that such an affidavit was filed raises the presumption at least that it had been; and in the absence of a showing to the contrary, the presumption is conclusive.

For the error in refusing said instruction number two, the cause is reversed and remanded. All concur.