ISIDOR SIEGEL, Respondent, v. ILLINOIS CENTRAL RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals. Argued and Submitted December 7, 1914. Opinion Filed January 5, 1915.

1. **WITNESSES: Impeachment: Competency of Witness.** The testimony of a witness that he knew the reputation of another witness for truth and veracity, and that it was not good, should not be stricken out merely because, on cross-examination, he is unable to give anything like a correct definition of the term "reputation for truth and veracity;" this merely affecting the weight of his testimony, which is a question for the jury to determine.

2. **CARRIERS OF PASSENGERS: Injury to Passenger: Derailment: Contributory Negligence.** In an action for injury to a passenger on a railroad train from a derailment of a car, where defendant did not plead contributory negligence, an instruction for plaintiff which, *inter alia*, charged that plaintiff was not guilty of contributory negligence, should not have been given, but the giving of it did not constitute reversible error.

3. ———: Care Required of Carrier. A carrier of passengers must, so far as it is capable by human care and foresight, carry passengers safely, and is responsible for injuries caused by the slightest negligence.

4. ———: Injury to Passenger: Derailment: Res Ipsa Loquitur. Where a passenger is injured by the breaking down or derailment of the coach in which he is riding, a prima-facie presumption arises that the accident was caused by the negligence of the carrier, and, to escape liability, it must show that the injury was the result of inevitable accident or some cause which human precaution and foresight could not have averted.

5. ———: ———: Sleeping Car Passenger: Liability of Railroad Company. A railroad company is responsible for the operation of a train to which a sleeping car is attached, although the latter is owned by an independent company, and hence is liable for negligent operation of the train, causing a derailment of such car and consequent injury to a passenger therein.

6. ———: ———: Riding in Unauthorized Place. A passenger on a railroad train, who, for a temporary purpose of his own, went into a sleeping car forming a part of the train, without paying the extra fare demanded for the privilege of riding therein, remained a passenger, and, as such, was entitled to recover for injuries sustained by reason of the derailment of such car while he was in it, although the coach in which he had been riding was not derailed.

Appeal from St. Louis City Circuit Court.—*Hon. William T. Jones,* Judge.

AFFIRMED.

*Watts, Gentry & Lee* for appellant; *J. G. Drennan* of counsel.

(1) The court erred, in giving, at plaintiff's request, an instruction on contributory negligence as follows: "The court instructs you that on the pleadings and evidence in this case plaintiff was not guilty of any negligence that contributed to or caused any of the injuries for which he sues." There was no plea of contributory negligence in this case. The defendant did not attempt to prove contributory negligence, hence the issue of contributory negligence was not in the

case, and was not an issue upon which instructions should have been given, for it is a well-settled rule of law that instructions should be given only on issues involved in the case. Grout v. Railroad, 151 Mo. App. 330; Wood v. Railroad, 188 Mo. 255. The effect of this instruction was to compliment the plaintiff and improperly emphasize the lack of contributory negligence on his part. (2) The court erred in refusing to give the instruction asked by defendant. The refusal of this instruction was error for which a new trial ought to be granted. There was evidence in the case to support all of the hypotheses of this instruction. The defendant contracted to carry the plaintiff in a certain part of its train, to-wit, the chair car. That part of the train was safely carried. The defendant was entitled to this instruction, based on the evidence offered by the defendant, which showed that the plaintiff, Siegel, was not in the chair car, but was in the Pullman sleeper "Kempton," where he had no right to be, and the defendant therefore owed him no duty in the Pullman car. If he had admitted that he was in the Pullman car at the time of the accident, the defendant would have been entitled to a peremptory instruction to the jury to find against him. But since he denied that, an instruction based on defendant's evidence, which showed that he was wrongfully in a Pullman car, ought to have been given. Higgins v. Railroad, 36 Mo. 418; Feeback v. Railroad, 167 Mo. 216; Railroad v. Lane, 83 Ill. 448; Savage v. Railroad, 164 Ill. App. 634; Railroad v. Yarwood, 15 Ill. 468; Fletcher v. Railroad, 187 Mass. 463.

*McShane & Goodwin* and *William Baer* for respondent.

(1) The court did not err in refusing defendant's instruction which in effect told the jury plaintiff could not recover if he left his place in the chair car and

went to the toilet room of the sleeper and while there was injured. Even if plaintiff went into the sleeper and was using the toilet facilities therein, such facts would not abrogate the *status* of passenger and carrier between himself and the defendant. 6 Cyc. 536-537, and footnote 26; Wilmot v. Railroad, 106 Mo. 535; Railroad v. Lowell, 151 U. S. 209; Martin v. Railroad, 51 S. C. 150; Railroad v. Sandusky, 14 Ky. Law, 768; Railroad v. Bennett, 82 Ark. 393. (2) The court did not err in giving the plaintiff's instruction number 3, withdrawing the issue of plaintiff's contributory negligence from the consideration of the jury. (a) The question of whether plaintiff was guilty of contributory negligence or not could have been made an issue, even though it had not been pleaded, if plaintiff's evidence tended to show such. Ramp v. Railroad, 133 Mo. App. 703; Kappes v. Brown Shoe Co., 116 Mo. App. 172. (b) Even if the instruction was improper and not responsive to the issues, it does not constitute reversible error. Bongner v. Zeigenhein, 165 Mo. App. 328; Briscoe v. Laughlin, 161 Mo. App. 76; Kiel v. Ott, 168 Mo. App. 40; Mullinax v. Lowrey, 167 Mo. App. 445; Tranbarger v. Railroad, 250 Mo. 46; Culver v. Fire Ins. Co., 141 Mo. App. 205; Connelly v. Railroad, 133 Mo. App. 310.

REYNOLDS, P. J.—Action by plaintiff for damages resulting from injuries sustained by him while a passenger on one of the defendant's trains. The petition is in the usual form, charging that while plaintiff was a passenger on the defendant's road in transit from Paducah, Ky., to St. Louis, Mo., the defendant "negligently and carelessly caused and permitted, in a manner to plaintiff unknown, the car which plaintiff boarded at Nashville, Tenn., in which plaintiff was then and there being transported by defendant, for hire, as aforesaid, to be derailed while moving rapidly, and wrecked, and thereby directly and proximately caused

plaintiff then and there to be injured and damaged.'' Specifying the damage, plaintiff demands judgment for $10,000.

The answer is a general denial.

There was evidence on the part of plaintiff to the effect that he, a Russian Jew, had lived in this country for several years, but did not understand the English language very well. Intending to go to St. Louis to buy goods for his store, plaintiff boarded the train of defendant at Paducah, Ky., having purchased a ticket entitling him to first-class passage to St. Louis. He testified that when he reached Duquoin, Ill., he changed cars, boarding a train for St. Louis; that when he did so, he asked the conductor for a sleeper and the conductor told him that the train did not carry sleepers. He entered a car which he called ''a Pull car,'' but which it appears was an ordinary day coach. Shortly after midnight he changed from that into a chair car, paying the conductor $1.25, the extra fare charged for riding in that car. He took a seat near one end of the car and early in the morning awoke, and desiring to go to the toilet room, he tried the door of that room in the car in which he was riding and found it locked. He then went into an adjoining car, which it appears was a Pullman and was met by the colored porter, of whom he inquired where the toilet room was. The porter told him it would be ''opened directly.'' Plaintiff testified that he went back into the chair car and was not sure whether he had sat down or was standing up when the car was derailed and he was thrown and received the injuries complained of, the car being thrown over on one side. The testimony of plaintiff was very positive that the car in which he had been riding—that is, the chair car—was the one which was derailed. He denied very positively that he was in the sleeper when the accident occurred. He was helped up and received medical and surgical treatment when the train arrived at St. Louis, par-

ticularly for a hurt to his ear which he claimed he had sustained in consequence of the accident. That, in subtance, in the testimony of plaintiff.

On the part of defendant there was testimony to the effect that the chair car in which plaintiff had been riding was not overturned; that the wheels of the rear truck of that chair car had left the rails and ran along the ties for some ten or fifteen feet; that the chair car remained standing in such a position that anybody could sit in it or walk through it without any difficulty after the train stopped; that the sleeper immediately back of this chair car was the only car in the train that had turned over; that plaintiff was in this sleeper at the time he was hurt, attempting to wash in the toilet room; that the conductor of the sleeping car, seeing him there and in his socks, asked him what he was doing there and while they were talking the sleeper turned over. Plaintiff had told the porter of the sleeper, according to the latter, that he had a berth in that sleeper. Plaintiff was afterwards picked up by members of the train crew or perhaps others, and carried into a car of the train and brought to St. Louis.

The contention of defendant in this case is that plaintiff, not having a Pullman car ticket and not being entitled to ride in that car, was a trespasser and could not recover.

At the instance of plaintiff the court instructed the jury, in substance, that if they believed from the evidence that plaintiff was a passenger upon a train of defendant at the time he claims to have been injured, "then, having received plaintiff upon board of such train, the due obligation of defendant to plaintiff was to use the highest degree of care practical among prudent, skillful and experienced men in that same kind of business, to carry him safely, and a failure of the defendant (if you believe there was a failure) to use such highest degree of care would constitute negligence on its part; and the defendant would be respon-

sible for all injuries resulting to plaintiff, if any, from such negligence, if any. And if you believe from the evidence that plaintiff was a passenger on one of defendant's trains, and that said train upon which he was a passenger (if you find such), while being operated by defendant, and that the car or portion of said train on which plaintiff was a passenger (if you find such) became partially derailed, the presumption is that it was occasioned by some negligence of the defendant, and the burden of proof is cast upon the defendant to rebut this presumption of negligence and establish by the preponderance of all the evidence that there is no negligence on its part, and that the injury, if any, was occasioned by inevitable accident, or by some cause which such highest degree of care could not have avoided. *The court instructs you that on the pleadings and evidence in this case plaintiff was not guilty of any negligence that contributed to or caused any of the injuries for which he sues.*" Continuing, the court instructed the jury as to what they were to consider in determining the measure of damages, if they found in favor of plaintiff, awarding him not to exceed the amount prayed for in his petition.

On behalf of defendant, the court instructed the jury as to the credibility of witnesses; that the burthen of proof is on plaintiff, defining that, and as to the weight to be given the opinion of experts.

In support of its theory, defendant asked the court to give to the jury the following instruction:

"If the jury find from the evidence in this case that passengers riding on the train on which plaintiff was riding at the time of the wreck referred to in this case were required to pay extra compensation before being allowed to ride in any sleeping car on said train; and if the jury further find from the evidence in this case that the plaintiff knew of said requirement at the time of and prior to said wreck; and if the jury further find from the evidence in this case that the plain-

tiff did not pay the extra compensation for riding in a sleeping car, but paid only such fare as would entitle him to ride in a day coach or chair car on said train; and if the jury further find from the evidence in this case that, without having paid such additional compensation, plaintiff entered a sleeping car constituting part of said train and attempted to use the washroom of said sleeping car, and knowing it to be a sleeping car, and to ride in said sleeping car, and that whilst plaintiff was in said sleeping car a wreck occurred and said sleeping car was overturned and plaintiff was injured, then the plaintiff is not entitled to recover and your verdict must be for the defendant."

The jury returned a verdict in favor of plaintiff in the sum of $1750, judgment following, from which, interposing a motion for new trial and excepting to the action of the court in overruling it, defendant appealed.

The only points argued here for reversal of the judgment and only errors assigned, are to the giving of that part of the instruction which is italicized; the refusal of the instruction offered by defendant which we have set out, and to the action of the court in refusing to strike out evidence of plaintiff as to the reputation for truth and veracity of a witness, as it appeared by plaintiff's own testimony that he did not understand the meaning of reputation or truth and veracity.

Disposing of this latter contention, we do not think it tenable. It is founded on matter growing out of cross-examination of plaintiff as to the meaning of the words "reputation for truth and veracity." Plaintiff had testified in rebuttal, referring to a certain witness who had testified against him, that he knew the reputation of this witness for truth and veracity; that it was not good. Counsel for defendant cross-examined plaintiff as to what he understood by these terms and it developing that he could not give anything like a cor-

rect definition of them, counsel moved to strike out all of his testimony on the matter. This the court refused. We think there was no error in this ruling of the court. We are not holding that before a witness can be asked to state what the reputation of another is for truth and veracity, he must not first be asked if he knows that; that if he answers affirmatively he can then be asked what it is. But having so answered, it is then a matter for cross-examination to ascertain the basis and extent of his knowledge. The weight of the witness's testimony is then for the jury.

The only objection leveled at any instruction is to that part of the first instruction, which we have set out and underscored. We are unable to see that including this in the instruction was in any way harmful to defendant, as is argued. It is true defendant had not pleaded and was not relying upon the defense of contributory negligence and the theory upon which it introduced its evidence was not, strictly speaking on the theory of contributory negligence on the part of plaintiff but of nonliability of defendant, by reason of plaintiff being where he had no business to be. We do not think that this part of the instruction should have been given, but do not think that embodying it in that instruction constituted reversible error.

The main question in the case turns upon the refusal of the court to give the instruction we have set out, which was asked by defendant.

The law is well settled that a railroad company, engaged in the carriage of passengers, is required, so far as it is capable, by human care and foresight, to carry them safely, and it is responsible for all injuries to its passengers arising from even the slightest negligence on its part. When a passenger suffers injuries received in consequence of the breaking down or overturning of the coach in which he is riding, a prima-facie presumption arises that such casualty was caused by negligence on the part of the carrier, and the bur-

then is on the latter to repel such presumption and to show that the injury was the result of inevitable accident or some cause which human precaution and foresight could not have averted. [Furnish v. Missouri Pac. Ry. Co., 102 Mo. 438, 13 S. W. 1044; Clark v. Chicago & Alton R. R. Co., 127 Mo. 197, 29 S. W. 1013.] Both of these cases are followed and quoted from in Holland v. St. Louis & S. F. R. R. Co., 105 Mo. App. 117, 79 S. W. 508. There is no attempt on the part of defendant in this case to rebut the presumption made by the fact of the derailment and overturning of a car or cars of this train, or to attempt to show that the plaintiff received his injuries as the result of inevitable accident. As before stated, the sole contention of defendant, appellant here, is that plaintiff was in a place where he had no business to be and that if he had remained in his seat in the chair car, the accident would not have happened; that not having paid for riding in the Pullman or sleeper, he was where he had no right to be, and where the railroad defendant was under no obligation to him as a carrier; that plaintiff did not occupy the position of a passenger, so far as defendant was concerned by reason of his being in that Pullman sleeper. This refused instruction, in substance, was drawn on the theory that if the jury found that plaintiff was injured while in the Pullman, as the defendant contended, and as it introduced evidence very strongly tending to prove, and not while he was in the chair car, as plaintiff insisted, then plaintiff could not recover.

A railroad company, a common carrier, is responsible for the operation of the train to which a sleeping car or Pullman, as commonly called, is attached, or of which train it is a part, the sleeping car company, if the sleeping car is under a separate ownership, not being responsible for the operation of the train. [4 Elliott on Railroads (2 Ed.), sec. 1617a.] Mr. Elliott further says in his work above referred to and in

section 1625 of that edition: ''In general, sleeping car or parlor car companies are distinct organization from railroad companies, and the coaches of the former are simply hauled as a part of the train by the latter, and the former ordinarily furnish the coaches, equipments and servants, having direct and full control of the employment and discharge of employees as well as of their conduct and duty.'' ''But,'' says Mr. Elliott in the same section, ''the relation between a railroad company and a sleeping car company is a peculiar one for the reason that the one company undertakes to carry the passengers and receives the compensation for carriage, while the other company simply undertakes to furnish additional accommodations and only receives compensation for such additional accommodations. There is, therefore, reason for holding that so far as concerns the duty of carriage the railroad company alone undertakes it, and is responsible for a breach of that duty. . . . The general rule is that for injuries to passengers resulting from negligence in the operation of the train or from defects in the roadbed or the like the railroad company is liable is, therefore, entrenched by sound principle.''

We have found no case either in the decisions of the courts of our own State or elsewhere, exactly covering the particular point here involved and can only determine it upon the application to it of principles which underlie the responsibility of common carriers.

In Holland v. St. Louis & S. F. R. R. Co., supra, the railroad company was refused an instruction to the effect that if plaintiff, after entering the car was furnished with a seat and voluntarily left it and was standing when thrown down by the jar, and that his so standing contributed to his injury, he could not recover. The Kansas City Court of Appeals held the instruction was properly refused, saying (1. c. •124): ''It is true plaintiff was provided with a seat when he entered the car, but he afterwards got up and went into

the baggage department of the car and when he returned some one had taken his seat; and as there was none other unoccupied he was compelled to stand. It is hardly necessary to offer any reason to satisfy ordinary intelligence that a passenger has the right to leave his seat in a railroad car temporarily for any legitimate purpose, provided he does not expose himself to danger thereby.''

.Judge BLAND, speaking for our court, said in Wagoner v. Wabash Railroad Co., 118 Mo. App. 239, l. c. 246, 247, 94 S. W. 293: ''A railway company carrying passengers, discharges its primary duty to a passenger when he is safely seated in his car; if, after being so seated, he leaves his seat, while the train is in motion, and goes from his car to another on private business with another passenger, he assumes the risk of being thrown and injured by the ordinary motion of the train and cannot recover, unless he can show his injury was caused by the negligence of the company and that his own negligence did not contribute thereto.'' In the same case, in a separate opinion, Judge NORTONI, speaking for himself and for Judge GOODE, has said, quoting from 2 Shearman & Redfield on Negligence (5 Ed.), sec. 524:

.''Passengers have a right to presume that all passenger cars are equally safe; and they ought not to be restricted to any one. Nor can they be required to sit still. The law, which makes liberal allowance for the natural restlessness of dogs, must surely make equal allowance for the restlessness of the average man. Long train journeys are monotonous and trying, at their best; and active men find it impossible to sit still all the way. No special reason for moving need be assigned.''

In the same work and section, and immediately following the portion quoted by Judge NORTONI as above, it is said: ''The only question is, whether, under all the circumstances, the act was one natural to

a prudent man, exercising his prudence. Slight reasons, such as a desire to smoke, or to drink, or because the car was not properly heated, have been held quite sufficient."

It is also said in the beginning of that same section 524: "There is no rule of law forbidding passengers on a train to change their seats or to move from one car to another, so long as they act prudently in doing so. Therefore the mere fact that an injury would not have been suffered, had the passenger remained in the seat or car which he first took, is not proof of contributory negligence."

While the point here involved is not expressly passed upon by our court in Johnston v. St. Louis & S. F. R. Co., 150 Mo. App. 304, 130 S. W. 413, that case was decided on the assumption that the passenger has a right to move from one car to another, to leave his seat where he would be safe, and pass out of that car by way of the vestibule.

In Costikyan, Admr. v. Rome, Watertown & Ogdensburg R. Co., 58 Hun. (65 N. Y. Sup.) 590, it is held that in the absence of instructions or notice from the company not to do so, a passenger in going from one car to another while the train was in motion, assumed only the ordinary risks incident to such action on his part and had a right to assume that appliances for moving the train were safe; that if injured while so doing in consequence of their not being safe, the railroad company is liable. This decision was affirmed by the Court of Appeals as see 128 N. Y. 633.

So the Texas Court of Civil Appeals held in Sickles v. M., K. & T. Ry. Co., 13 Tex. Civ. App. 434, 39 S. W. 493. That also was substantially the holding of the Georgia Supreme Court in Cotchett v. Savannah & Tybee Ry. Co., 84 Ga. 687.

In Chicago, Milwaukee & St. Paul Ry. Co. v. Lowell, 151 U. S. 209, it is held that even proof that the

186MoApp42

passenger violated the rules of the company as to the manner and place of exit from the train, and even without the excuse of urgent necessity, would not, as a matter of law, debar him from a recovery.

In Martin v. Southern Ry., 51 S. C. 150, a passenger was injured while attempting to board and ride a baggage car attached to a passenger train, on which train he was a passenger. The Supreme Court of South Carolina said (l. c. 155) : ''We do not think that the particular place where a person may be on a passenger train should necessarily and conclusively determine whether or not such person is a passenger. One who has paid his fare and procured his ticket may disregard some rules prescribed by the carrier, and yet such conduct on his part would not change the fact that he was a passenger, nor relieve the railway company from liability.''

In Illinois Central R. R. Co. v. Sandusky, 14 Ky. Law 767, it is held by the Kentucky Superior Court, that a passenger has the right to occupy a car other than that in which he had been assigned or in which he had taken a berth, and was not guilty of contributory negligence in so doing.

While these cases are not precisely in point they serve to illustrate the respective duties and obligations of carrier and passenger.

Our conclusion in the case at bar is, on consideration and application of the authorities, that this instruction which was asked by defendant was properly refused. Plaintiff here had purchased a ticket entitling him to first-class passage on the train. The fact that he was injured while temporarily in the sleeping car attached to that train for some purpose of his own, if it is true, as the evidence tends to prove was the case, and for the purposes of this decision we will assume that it is the case here, does not take from the railroad company its obligation and duty to plaintiff as a passenger. He was a passenger, having paid

full fare to ride on that train. Assuming that he was in the sleeper, where to ride involved payment of an extra fare, he not having paid that extra fare, he was still a passenger on that train.

Plaintiff was not attempting to ride in the sleeper as a regular passenger in it; he was there, in that car, casually; for a temporary purpose; to wash his hands. We would hesitate long and yield only to controlling authority to the contrary, before we would hold that by so acting, he, as a passenger entitled to ride on that train to which a sleeping car was attached, having paid full fare to ride on that train, was, by that act beyond the pale; that the carrier was absolved from its duty to him as a passenger. Yet this is what this refused instruction asked by defendant sought to have laid down as the law.

We see no reversible error in the case. The judgment of the circuit court is affirmed. *Nortoni, J.,* concurs. *Allen, J.,* not sitting.

