## CONWAY v. SALT LAKE & O. RY. CO.

No. 2805. Decided February 7, 1916. (155 Pac. 339.)

1. CARRIERS—CARRIAGE OF PASSENGERS—CARE REQUIRED—CONDITION OF CARS. The fact that there was an open space between cars on an electric railway made necessary by sharp curves in the line, with an implied invitation to passengers to pass from one car to another, does not constitute negligence. (Page 514.)

2. CARRIERS — CARRIAGE OF PASSENGERS — ACTIONS FOR INJURIES—BURDEN OF PROOF. In an action for injuries to a passenger from a fall in passing from one car to another, the burden of proving negligence is upon plaintiff. (Page 516.)

3. CARRIERS — CARRIAGE OF PASSENGERS — ACTIONS FOR INJURIES—QUESTIONS FOR JURY. In an action for injuries to a passenger from a fall in passing from one car to another, evidence *held* to present a question for the jury as to negligence in failure to provide sufficient light or to warn passengers of open space between cars. (Page 516.)

4. CARRIERS—CARRIAGE OF PASSENGERS—CARE REQUIRED—LIGHT—WARNING TO PASSENGERS. While it is not negligence merely to permit a space between car platforms without warning to passengers in the daytime, it is the carrier's duty at night to furnish sufficient light to permit passengers to see the space, or to warn passengers. (Page 516.)

5. CARRIERS — CARRIAGE OF PASSENGERS — ACTIONS FOR INJURIES—INSTRUCTIONS. In an action for injuries to a passenger from a fall in passing from one car to another, an instruction, placing the burden of proof on the carrier to show that it was not practical to operate its cars without leaving a space between the ends of the platforms, was erroneous. (Page 517.)

6. CARRIERS—ACTIONS — BURDEN OF PROOF — CONTRIBUTORY NEGLIGENCE. When the evidence is conflicting, or different inferences may be drawn therefrom, the burden of establishing contributory negligence is on defendant, whether the evidence comes from the plaintiff's or defendant's witnesses; and in either case contributory negligence must be established by a preponderance of the evidence. (Page 518.)

Appeal from District Court, Second District; *Hon. J. A. Howell,* Judge.

Action by Louise Conway against the Salt Lake & Ogden Railway Company.

Judgment for plaintiff. Defendant appeals.

REVERSED AND REMANDED for new trial.

*Boyd, DeVine & Eccles,* for appellant.

*Geo. McCormick, Joseph E. Evans* and *John G. Willis,* for respondent.

FRICK, J.

The plaintiff brought this action to recover damages for personal injuries which she alleged she sustained through the defendant's negligence while a passenger on one of its trains. She, in substance, alleges in her complaint that the defendant was negligent in the following particulars: (1) That, owing to the large number of persons who were about to enter the cars of the defendant at the time and place the accident occurred, defendant was negligent "in failing to provide servants for the proper direction and management of said persons," etc., (2) for failure to "provide its passengers then and there being with sufficient transportation accommodation, facilities, and equipment," etc., (3) for failure to "provide any reasonable means for passage from one of its said cars to the other"; and that it did "negligently construct, maintain, and operate its said cars so as to leave an open space between the ends of the platforms thereof of about seventeen inches distant in width, and so as to leave said platforms inadequately and insufficiently lighted and illuminated." The plaintiff further alleged that in entering upon defendant's train, consisting of four cars, at about eleven o'clock at night at Lagoon station, and while said train was standing still for the purpose of receiving passengers, she passed up the steps of one car, and, on reaching the platform thereof, noticed that the seats in said car were all occupied by passengers, and, in order to obtain a seat, she, in attempting to pass through the opening or doorway at the end of the vestibule of the car she was on to the vestibule of the adjoining car, stepped into the space between the two cars existing as aforesaid, and fell, by reason of which fall she sustained severe bodily

injuries. The evidence on the part of the plaintiff, in brief, is to the effect that Lagoon station is a pleasure resort between Salt Lake City and Ogden on the line of defendant's electrically equipped interurban railway; that on the night of July 17, 1913, there were a large number of people at said, Lagoon station from Ogden city, among whom were the plaintiff and some of her friends or family; that the defendant provided a train of four cars, one of which the plaintiff boarded with a view of getting a seat. In describing what then happened, the plaintiff testified:

"No, I didn't get a seat. I was on the platform, and the platform was pretty well crowded, and I asked Mrs. Stevens to step aside to allow me to pass, so she tried to move aside, and I went to go from one car to the other, and that is the last I remember. I fell and don't know anything more about it. I became unconscious and remained so from Thursday until Saturday evening."

On cross-examination she further testified:

"The platform was crowded. I just stepped up and then turned. Mrs. Stevens was standing there, and I asked her to step aside and allow me to pass from one car to the other. That would be the one south of the one I was on. I don't know, but I suppose I just took one step and supposed it was all inclosed like an ordinary train. Q. And you just started to walk right through, looking over into the other car? A. Yes, sir. Q. You were looking into the other car to see if you could get a seat while you were walking through? A. To see if there was any chance. Both platforms were crowded. Q. When you started to walk between these cars, you were looking right ahead of you, into the car? A. There was no way of looking down; there was too much of a crowd there Q. Was there a crowd between the cars? A. Standing just like they were as crowded as they could be. Q. Was there a crowd of people standing between the two cars? A. I suppose there was. Q. You suppose there was. Well, was there? A. Well, no. How could they be between? Q. That is what I am asking you. There were no people between the cars? A. No. Q. So that the crowd of people didn't prevent you from looking down between the cars?. A. It wasn't

light enough to see, if I had looked down. Q. How do you know? You didn't look down? A. My gracious! The lights weren't good that night anyway. Q. But you didn't look down? A. I naturally wouldn't look down. Q. And you didn't look down? A. I didn't look down, no."

Mrs. Stevens, who was a witness for the plaintiff, testified:

"The platform was packed. In the car it was packed all through. I was backed right up against the brake, and, when Mrs. Conway asked me, I was talking to her, and then I turned to my husband, and the next I remember is her speaking to me and asking me if I would move so that she could pass through to the car on the south. The next I remember is turning and seeing her step right into the chain. There was a chain that linked the cars together, and her foot caught right in there, and she fell toward the west, and her head struck the ground, or the track; I don't know which. I could not say what the space was between the cars, but I think it was the ordinary space, somewhere about a foot, I should judge."

Apart from the evidence that there was much crowding in getting onto the cars and on the platforms thereof, and the evidence respecting plaintiff's injuries, the foregoing is practically all the evidence in respect of how the plaintiff was injured and the condition of the platforms of the cars, and the lighting thereof.

Upon substantially the foregoing evidence, the defendant moved for a nonsuit upon two grounds: (1) That the plaintiff had failed to establish any negligence on the part of the defendant; and (2) that the evidence "affirmatively shows that the direct cause of the accident is due to the negligence of the plaintiff herself." The motion was denied, and the defendant then produced evidence to the effect that its cars were of the standard type and make used by interurban and city railways; that it was impractical to build platforms on cars used for city and interurban travel which would come in close contact like those on standard Pullman cars used on ordinary steam railways; that the reason why such platforms were not in general use and could not be successfully operated on city and interurban railways was on account of the short

curves on such lines. It was, however, conceded by defendant's expert witnesses testifying upon that question that there were no very short or sharp curves on defendant's line; that the cars in use by defendant could be operated on a fifty degree curve, while the shortest curve on its line is about sixty degrees; that, while said line of railway is constructed and operated into the cities of Salt Lake and Ogden, yet there are no curves shorter than sixty degrees in either city or on the main line. Defendant also proved that the car platforms were necessarily required to be rounded at the ends thereof so that the space between the platforms would be wider at the sides than it would be at the center where the cars were coupled together and where the passengers pass from one car to the other; that the space between the cars in the center of the platform was about seven inches wide, while farther out towards the sides of the cars the space would be about ten inches. It will be remembered that Mrs. Stevens testified that she judged the space between the cars in question on the night in question was about a foot.

The defendant's evidence was not controverted. After all of the evidence was in, the defendant moved the court for a directed verdict in its favor, which motion the court denied and submitted the case to the jury upon the evidence and instructions, some of which were excepted to by the defendant and which will be noticed hereinafter. The jury returned a verdict for the plaintiff, upon which the court entered judgment, from which the defendant appeals.

Among other instructions, the court gave the following:

"While the mere fact that an accident has happened is not sufficient proof to charge the defendant with negligence, yet in this case the court instructs you that if you find from the evidence that while the plaintiff was a passenger on defendant's car, and while she was attempting to pass from one car to another, she was injured by reason of there being an open space between the vestibule platforms of said cars, then the court charges you that she has proved such facts as constitute *prima facie* evidence of negligence on the part of the defendant, and that the burden is cast upon the defendant to show that it was not negligent

with respect to said passageway within the meaning of the instructions heretofore given you.''

The defendant excepted to that portion of the instruction we have copied, and now insists that the giving thereof constituted prejudicial error.

It will be observed that the court charged the jury that, if they found that there was ''an open space between the vestibule platforms of said cars,'' such fact, standing alone, was sufficient to ''constitute *prima facie* evidence of negligence on the part of the defendant.'' In other words, the charge was to the effect that the plaintiff had made out a *prima facie* case if she proved that there was any space between the vestibule platforms of the cars from one of which she was in the act of passing to the other when she fell. The question of whether to permit such space to exist between cars operated on elevated street railways constituted negligence has been passed on by the Supreme Judicial Court of Massachusetts in the following cases: *Welch* v. *Boston El. Ry. Co.*, 187 Mass. 118, 72 N. E. 500; *Falkins* v. *Boston El. Ry. Co.*, 188 Mass. 153, 74 N. E. 338; *Hawes* v. *Boston El. Ry. Co.*, 192 Mass. 324, 78 N. E. 480. In the Falkins Case the space between the platforms of the cars was shown to be seven and one-half inches. The gist of the decision is reflected in the headnote, which reads as follows:

"It was not negligence for an elevated railroad company to permit an open space in the passageway between the platforms of its cars, made necessary by sharp curves in its line, and to impliedly invite passengers to use such passageway at stations in going between the cars without informing them in words of the existence of such open space."

In *Hawes* v. *Boston El. Ry. Co., supra,* the evidence showed that the space between the platforms was seven inches at the nearest point, and eleven inches at the widest point, and the court held that merely to show that there was such a space was not evidence of negligence. In the course of the opinion, the court says:

"We see no evidence of negligence on the part of the defendant. There is nothing to show that the space between the cars could have been made any less, or that the ends of the platform could have

been made any different. The defendant was not bound to warn the plaintiff of the space between the cars, or to assist her in crossing from one to the other."

The foregoing cases are referred to in 1 Nellis on Street Railways (2d Ed.), Section 290, and no other cases are by the author referred to contrary to the rule laid down by the Massachusetts court.

In *Furgason* v. *Citizens' St. Ry. Co.*, 16 Ind. App. 171, 44 N. E. 936, it is held that the company is not liable for injuries resulting to one passenger from the crowding or pushing of other passengers. *Rothchild* v. *Central Ry. Co.*, 163 Pa. 49, 29 Atl. 702, is in principle the same as the cases cited from Massachusetts. While plaintiff's counsel, in their brief, question the soundness of the cases from Massachusetts, yet they have failed to refer to any case which holds to the contrary, and, after a somewhat extended search, we have not been able to find any. We cannot see how it can be said that the mere fact that there is an open space to the extent shown by the evidence between the platforms of two connecting cars constitutes negligence.

The burden of showing negligence was upon the plaintiff. In view of the foregoing statement of the law, defendant's counsel insist that the court erred in not granting their motion for a nonsuit, and also erred in refusing to direct a verdict in favor of their client. We cannot go to that extent. While it is true, as we have seen, that by merely showing that there was a space between the cars the plain- **2, 3, 4** tiff failed to prove negligence, yet she also alleged that the defendant was negligent in not sufficiently lighting or illuminating the space between the car platforms so that such space could be seen, and that passengers could thus avoid stepping into the same. True, plaintiff testified that she did not look down in attempting to pass between the cars, but she also stated the reason why she did not, and the court correctly charged the jury with respect to her duty in that regard, and further charged under what circumstances she would be prevented from recovering. The jury found the facts in favor of the plaintiff in that respect. There was at least some substantial evidence respecting the insufficiency of light, and

that the space between the car platforms was not properly or sufficiently illuminated. There was evidence both ways upon that subject, but the ultimate fact was, nevertheless, for the jury. While, as we have pointed out, merely to permit a space to exist between the car platforms did not constitute negligence, yet we are clearly of the opinion that where any considerable space was permitted between the car platforms so that passengers could or might step into the same, and where, as here, the defendant impliedly invited the passengers to pass from one car to the other over the space aforesaid, it was its duty in the nightime to furnish sufficient light to permit the passengers to see such space so that they could avoid stepping into it in passing from one car platform to the other. While, as has been pointed out by the Massachusetts court, no duty rested upon the defendant to warn the passengers of the existing space in the daytime, for the reason that it was open and visible to all, yet, in the darkness of the night, we think it was the duty of the defendant, either to warn the passengers of the space, or to have sufficient light between the car platforms that one passing from one to the other could see and avoid stepping into the space. To hold otherwise would permit the defendant to maintain a dangerous trap with impunity. Such is not the law. There was therefore sufficient evidence upon the charge with respect to insufficient light to take the case to the jury. The court therefore committed no error in denying the motions to which we have referred.

Complaint is also made of instruction No. 3 given by the court on its own motion. It is contended that the instruction is erroneous because it places the burden of proof upon the defendant to show that it was not practical to operate its cars without leaving some space between the ends of the platforms. The instruction was framed upon the theory that the mere fact that there was a space between the car platforms was *prima facie* evidence of negligence. We have already shown that such a theory cannot be maintained. Hence the instruction was faulty in that regard.

Instruction No. 4 is also complained of. That instruction is subject to criticism only because it confirms other instruc-

tions which, for the reasons already stated, were in themselves faulty.

What has been said also covers defendant's assignments respecting the court's refusal to charge the jury as requested by it.

In view of what has already been said herein, it could subserve no useful or practical purpose to point out wherein the offered requests were faulty, or whether they stated correct principles of law. The trial court, in following the law as herein indicated, will not commit the error complained of again. In this connection, we desire to add, however, that request No. 4 offered by the defendant does not correctly state the rule with respect to the burden of proof upon the question of contributory negligence. The true rule in this jurisdiction is that when the evidence is conflicting, or when different inferences may be drawn therefrom, the burden of establishing contributory negligence is upon the defendant, regardless of whether the evidence with regard thereto comes from the plaintiff's or the defendant's witnesses, and in either event contributory negligence must be established by a preponderance of the evidence given upon that subject. Request No. 4 was faulty in not placing the burden of proof upon the defendant, although contributory negligence may have been inferable from the testimony produced by the plaintiff.

For the reasons hereinbefore stated, the judgment is reversed, and the cause is remanded to the District Court of Weber County, with directions to grant a new trial. Appellant to recover costs.

McCARTY, J., concurs.

STRAUP, C. J.

I concur. Under the evidence I think the question of the negligence was wholly one of fact, which to establish, the plaintiff had the burden, and that where the court told the jury certain things constituted a *prima facie* case of negligence he invaded the province of the jury.