## TAYLOR v. BAMBERGER ELECTRIC R. CO.

No. 3933.   Decided September 14, 1923.   Rehearing denied December 5, 1923.   (220 Pac. 695.)

1. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE AND ASSUMPTION OF RISK DISTINGUISHED. Though there is a clear distinction between contributory negligence and assumption of risk, under certain circumstances the same acts or conduct may render one guilty of contributory negligence or give rights to the defense of assumption of risk.[1]

2. CARRIERS—PASSENGER ON ELECTRIC TRAIN HELD CONTRIBUTORILY NEGLIGENT IN ASSUMING POSITION ON CROWDED SIDE STEP. A passenger on an electric train, who to avoid heat and smoke in a smoking car, where he had standing room, left it and boarded an over-crowded open car having a side step the whole length of it by forcing and wedging himself between persons already standing on the step, *held* contributorily negligent as matter of law, so as to preclude recovery for injuries sustained when he lost his balance and fell as the car lurched in passing over a crossing.

3. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE WILL NOT DEFEAT RECOVERY FOR WANTON OR CRIMINAL ACTS. Ordinary negligence of the party injured is not a defense as against criminal or wanton acts, though they be characterized as negligent acts merely.[2]

4. NEGLIGENCE—QUESTION FOR JURY EXCEPT WHERE EVIDENCE IS UNDISPUTED. Negligence and contributory negligence are questions for the jury, except where there is no conflict in the evidence or no conflicting inferences are permissible; such questions then being of law for determination by the court.

5. CARRIERS—LIABLE FOR HIGH DEGREE OF CARE, THOUGH NOT INSURERS OF PASSENGER'S SAFETY. Common carriers as public service corporations are liable for a high degree of care in transporting passengers, though not liable as insurers.

[1] *Kuchenmeister* v. *L. A. & S. L. R. R. Co.*, 52 Utah, 116, 172 Pac. 725.

[2] *Woods* v. *Southern Pacific Co.*, 9 Utah, 146, 33 Pac. 628.

6. NEGLIGENCE—INSTRUCTION ON BURDEN OF PROVING CONTRIBUTORY NEGLIGENCE HELD ERRONEOUS. Where all the evidence on the question of contributory negligence was elicited from plaintiff himself, an instruction that "the burden of proving negligence always rests upon the party alleging it," and that the burden of proving contributory negligence, as alleged in the answer, rested on defendant, *held* erroneous as requiring affirmative proof, regardless of plaintiff's admissions.[3]

On Application for Rehearing.

7. CARRIERS—CARRIER LIABLE FOR DISCOMFORTS FROM FAILURE TO PROVIDE ADEQUATE ACCOMMODATIONS. A passenger who suffers discomfort and is injured through the carrier's fault in failing to provide adequate accommodations and protection may recover damages for those discomforts as well as for his injuries.[4]

Appeal from District Court, Second District, Weber County; *Geo. S. Barker,* Judge.

Action by Leslie Taylor against the Bamberger Electric Railroad Company. Judgment for plaintiff, and defendant appeals.

REVERSED.

*DeVine, Howell, Stine & Gwilliam,* of Ogden, for appellant.

*Halverson & Pratt,* of Ogden, and *Marioneaux & Beck,* of Salt Lake City, for respondent.

FRICK, J.

Plaintiff recovered judgment against defendant, a common carrier, for personal injuries alleged to have been sus-

---

[3] *Dimmick* v. *Utah Fuel Co.,* 49 Utah, 430, 164 Pac. 872; *Dahlquist* v. *D. & R. G. R. R. Co.,* 52 Utah, 438, 174 Pac. 833; *Conway* v. *S. L. & O. Ry. Co.,* 47 Utah, 510, 155 Pac. 339, L. R. A. 1916D, 1109.

[4] *McCollum* v. *Southern Pacific Ry. Co.,* 31 Utah, 494, 88 Pac. 663; *Mathis* v. *Southern Pacific Co.,* 31 Utah, 507, 88 Pac. 668; *Fitzgerald* v. *Southern Pacific Company,* 31 Utah, 510, 88 Pac. 669.

tained through the negligence of the defendant while plaintiff was a passenger on one of defendant's passenger trains.

Defendant appeals from the judgment and assigns a large number of errors.

The undisputed facts material to this appeal are: That on September 4, 1916, plaintiff purchased a ticket from defendant at Ogden, Utah. The ticket entitled him to passage from Ogden to "Lagoon" and return. Lagoon is what is called a summer resort on defendant's railroad about 15 miles north of Salt Lake City and about 21 miles south of Ogden and is open to the public during the summer months of each year, and it seems is largely patronized by the public. September 4, 1916, was what is known as Labor Day, a legal holiday, and was the last day the resort was open for the season of 1916. The record shows that defendant operated a large number of trains running between Ogden and Salt Lake City each day during the resort season, and on the day in question, on which trains patrons of the resort and passengers generally were carried to and from the resort and to and from all the stations on defendant's route between the cities aforesaid. The day in question being Labor Day, a large number of people visited the resort, among whom was the plaintiff. The tickets, it appears, were good for passage on all of the trains passing the resort. On the day in question defendant had posted a notice that the train on which plaintiff took passage would leave Lagoon for Ogden some time between 11 o'clock and midnight and would be the last train that night. Plaintiff remained at the resort and was dancing until about the time the so-called last train was to leave for Ogden, when he and a friend of his left the dance hall to take the train for Ogden. Defendant's cars were operated by electricity by means of an overhead trolley. The testimony shows that the train on which plaintiff and his friend sought passage on the night in question consisted of five cars, some of which were what are called "open" cars; that is, cars with steps running along the entire length of both sides of the cars by means of which the passengers can enter or leave at any point along the sides of the cars. When plaintiff and his friend arrived at the train, they entered

one of the closed cars; but, finding the seats occupied, as plaintiff testified, they went forward through several cars to a car in which there was a smoking compartment, which they entered, but finding all the seats occupied in that car, they stood up in the aisle until the train had reached Layton, a station about six miles from Lagoon on the way to Ogden. On arriving at Layton plaintiff and his friend left the smoking car through an open window for the alleged reason that the smoking car was filled with smoke, was warm and uncomfortable, although both of them smoked while they were in the car. They went through the window, they say, to avoid forcing their way through the crowded condition of the cars. Plaintiff testified that before entering the cars at Lagoon he noticed the crowded condition of the cars, and that, stating it in his own language, "they were vastly overcrowded," including the steps on the open cars. He said that when they arrived at Layton the cars were so crowded that they, he and his friend, could not pass through the aisles, and that he knew the cars were in that crowded condition when he left the smoking car as before stated, but noticing that some passengers had alighted from the train they, nevertheless, went back to get onto one of the other cars. Both he and his friend stated that after leaving the smoking car they ran to the rear of the train and got onto the steps of one of the open cars while the train was still standing, and that he saw and knew the crowded condition of the steps at that time. In that connection, he, on cross-examination, in referring to the crowded condition of the car steps, was asked the following question which he answered as indicated:

"Q. You knew. And knowing that, you boarded that running board (the steps) and grabbed your companion's shoulder or something else and risked your life to ride to Ogden? A. Yes, sir."

He also testified that he though that getting on the running board was "a dangerous position." Further:

"Q. You knew that a dangerous position would result in personal injury to you if the danger befell you, didn't you? A. I did, I presume. Q. You took that position risking the chance that it would not (injure you), didn't you? A. The position I took, yes."

Referring to the time immediately after plaintiff and his friend had left the smoking car and undertook to get onto the open car, he was asked:

"Q. When you boarded this side board (the steps), on this car, there wasn't any space for yourself, as I understand it? A. We had to wedge ourselves in there; yes, sir. Q. So that you didn't get in a space vacated by other passengers; you simply crowded your way up the running board (the steps), elbowing the people apart sufficiently to find a space for you to stand? A. Why— Q. Answer it yes or no. Did you, or didn't you? A. Yes, sir."

The plaintiff and his friend made additional statements to the same effect, but it is deemed unnecessary to set them forth at large. Plaintiff also said that he would have been safe if he had remained in the smoking car or in the car he first entered. One of the plaintiff's witnesses, who was in one of the other cars, also testified that while the cars were crowded and all the seats were occupied, there nevertheless "was some standing room in the aisles of the car." The testimony on the part of plaintiff further showed that within a few minutes after the train had left Layton it "lurched" or "swayed," first to one side and then to the other, and that by reason thereof plaintiff fell or was thrown from the steps on which he was standing; that one of his legs fell onto one of the rails of the track, and the wheels of the car passed over it and crushed it. Indeed, the evidence is to the effect that plaintiff suffered severe injuries, resulting in the amputation of one of his legs. Plaintiff also proved that at or near the point where the train lurched or swayed as aforesaid there was a switch, and that there were three or four ties that had become loose or unstable by reason of the fact that water had run under them and had washed some of the ballast or earth from underneath the ties leaving the track in an unstable condition, so that the rails would be pressed down by the weight of the train passing over the point in question, and that it was the unsafe condition of the track that caused the car on which plaintiff rode to violently sway or lurch, and that that caused him to fall from the steps on which he was standing. There were a number of plaintiff's witnesses who testified to the lurching or swaying of the cars while passing over the track at the

point before stated.   The evidence was clear and explicit, however, that the lurching or swaying of the cars did not injure any one inside of the cars.   Moreover, so far as the evidence discloses, none except plaintiff was injured.

It was also contended that defendant was negligent in failing to properly light some of the cars, and that it was negligent in some other respects.   In view, however, that it does not appear that any of those alleged acts of negligence caused or in any manner contributed to the plaintiff's injury, those matters are of no importance and will not be referred to further.

While, as defendant's counsel state, there is no evidence that defendant had notice of the defective condition of the track, and further that there is no evidence respecting the length of time the defective condition existed so that notice of it might be inferred, yet, for the purposes of this decision, we shall assume that the evidence was sufficient to charge defendant with notice of the defective condition of the track and that the defect was of such a nature as to authorize the jury to find that defendant was negligent in not maintaining its track in a safe condition and hence had not discharged that high degree of duty in that regard that the law imposes upon it.

Defendant's counsel, however, vigorously insist that even though the foregoing conclusion should prevail, yet that in view of plaintiff's conduct, which we have set forth, he is not entitled to recover as matter of law and that the district court erred in refusing defendant's request to instruct the jury to return a verdict in favor of defendant, no cause of action, for the reason that plaintiff was guilty of contributory negligence which caused the injury and that he assumed the risk as matter of law.   It is further contended that the verdict and judgment are contrary to law.   The foregoing constitute the principal assignments of error.   In view that they present very important questions of law, we shall consider them somewhat at length.

The questions, therefore, for this court to determine are: Did plaintiff's acts and conduct, as stated by himself, constitute contributory negligence per se, and did he assume

the risk as matter of law? In this connection we desire to state that the question of assumption of risk is here discussed for the reason that in this case that issue was presented by the pleadings and the district court submitted it to the jury in connection with the issue of contributory negligence. Anything that is herein said on the question of assumption of risk is limited to the facts and circumstances of this case, and we do not now pass upon the question of whether, as between a common carrier and a passenger, that defense is ordinarily available to the carrier and, if so, to what extent.

As pointed out by this court in *Kuchenmeister* v. *L. A. & S. L. R. R. Co.*, 52 Utah, 116, 172 Pac. 725, there is a clear distinction between contributory negligence, and assumption of risk. It has, however, also often been held that under certain circumstances the same acts or conduct may make one guilty of contributory negligence and also give rise to the defense of assumption of risk.

The undisputed facts and circumstances, according to the authorities to which we shall hereinafter refer, clearly bring this case within the doctrine just stated. In view of plaintiff's statements, there is not a shadow of doubt that he acted with full knowledge of all the circumstances surrounding him and that all that he did in the premises was done deliberately and with full appreciation of the danger to which he exposed himself. True, he may not have anticipated the lurching or swaying of the cars; hence it is contended that because the lurching of the cars was due to the defendant's negligence plaintiff did not assume the risk. It no doubt is true that under ordinary circumstances a passenger will not be held to have assumed a risk arising out of a carrier's negligence. In this case, however, the circumstances are extraordinary. Here the defendant had provided the plaintiff with a reasonably safe place in which he could have been safely carried to his destination. He, of his own volition and through intelligent choice, left the place where he was safe and chose one that was extremely dangerous. It might just as well be contended that although plaintiff had chosen to ride on the trucks under the

cars and was injured by reason of the lurching of the
cars, his conduct did not constitute contributory negligence,
and that he did not assume the risk, since the lurching was
caused by reason of a defect in the track which the defend-
ant, in the exercise of that high degree of care which the
law imposed on it, should have prevented.

The law relating to a passenger's legal rights is well and
clearly stated by the Supreme Court of Minnesota in the
case of *Rolette* v. *Great Northern Ry. Co.*, 91 Minn. 16, 97
N. W. 431, 1 Ann. Cas. 313, in the following language:

"It is undoubtedly the law, as settled in the best-considered
cases, that the mere fact that there are no seats in the cars does
not justify a person in riding on the platform, for, so long as he
can find standing room, by reasonable effort, on the inside of the
cars, it is his duty to remain there; and also that, where it is un-
necessary to stand or ride upon the platform, going there or stand-
ing there is such negligence as will prevent a recovery for personal
injuries received; and, further, that while it is true that it was a
duty incumbent upon the defendant to furnish a seat for the plain-
tiff, and not merely standing room in the aisle of the car, the mere
fact that he was compelled to accept standing room, especially on
an excursion train, would not justify him in voluntarily leaving a
place of safety, such as the inside of a coach, and going to one of
peril—a platform, for instance.

"It is well known that passengers on excursion trains expect
more or less discomfort, and must endure it. They are carried at
greatly reduced rates, and must anticipate crowded conditions of
the coaches. If they assume dangerous places, it must be upon the
ground of necessity alone. If such places are assumed as a matter
of choice, and injury results, there can be no recovery."

In *Fisher* v. *West Virginia & P. R. R. Co.*, 42 W. Va. 183,
24 S. E. 570, 33 L. R. A. 69, the court, after quoting ex-
cerpts from other cases where it is held that a common carrier
is not liable to the passenger for injuries which he sustains
by reason of having "voluntarily and unnecessarily" placed
himself in a position of danger such as "riding on the plat-
form of a moving car before the train comes to a stop,"
proceeds:

"But, as before stated, it has been held that the failure of the
railway to perform its duty of providing the passenger with a seat
will excuse his contributory negligence in riding on the platform.
Yet this doctrine cannot be regarded as reasonable, for, if the

passenger cannot obtain a seat, he may stand within the car, or he may refuse to proceed on the journey, and may hold the railway responsible for damages resulting from its breach of contract; but injuries resulting primarily from his voluntarily putting himself in a position of such obvious danger as that of riding on the platform of a car in motion cannot be said to have been proximately caused by the failure of the railway to provide him with a seat."

The case of *Jackson* v. *Crilly*, 16 Colo. 103, 26 Pac. 331, in its facts and circumstances is not distinguishable from the case at bar. It was there held that a passenger was guilty of contributory negligence in assuming a dangerous position in an open car when he might have found standing room in a closed one. The accident there, as in this case, occurred on an excursion train.

The facts in the case of *Camden & Atl. R. R. Co.* v. *Hoosey*, 99 Pa. 492, 44 Am. Rep. 120, in legal effect, are likewise not distinguishable from those in the case at bar. The court, after stating the duty of a common carrier of passengers, proceeds to state the plaintiff's contention in that case as follows:

"His contention was that, in common with many other passengers, he was unable to procure a seat, and while searching for one he was thrown from the platform of one of the cars, and thus sustained the serious injury which resulted in the loss of this arm. The overcrowded condition of all the cars composing the train, and the consequent inability of the plaintiff and others to procure seats, were facts clearly proven."

The court then proceeds:

"Assuming for the present that the company was justly chargeable with negligence resulting in injury to the plaintiff below, and that under the circumstances he was not guilty of contributory negligence in passing from car to car in search of a seat while the train was in rapid motion, can it be pretended that it would not be gross negligence in him to voluntarily take a position near the outer edge of the platform and remain there until, by an ordinary jolt of the car, he lost his equilibrium and was thrown off? This is precisely what the evidence as to the plaintiff's position at the time of the accident clearly establishes."

The case of *Goodwin* v. *Boston & M. R. R.*, 84 Me. 203, 24 Atl. 816, is another case which is very similar in its facts to the case at bar. In that case, as in this, the jury returned a verdict for the plaintiff, and it was there contended, as it

is here, that the finding of the jury was conclusive. In that case, as in this, the facts were not in dispute and the case turned on plaintiff's own statements. In view that the case is very often cited by other courts, and as the facts and circumstances were practically parallel with the facts and circumstances of the case at bar the writer feels impelled to quote from the opinion of that case rather copiously. In the course of the opinion the court said:

"The danger of standing on the narrow platform of a passenger car, while the car is moving with the usual speed of railroad trains, is most conspicuous. No prudent man, no man ordinarily mindful of his conduct and of matters about him would occupy such a position. The greater the speed of the train, the more imminent the danger in such a place. Thoughtful people instinctively shudder when they see a person taking such risks. Curves are necessarily frequent in railroads in Maine, a fact well known to all, and a fact which makes the riding on the platform of a car most perilous.

"The knowingly incurring such an imminent, visible peril, the choosing to ride in such a conspicuously dangerous place, must be held by all reasonable people to be recklessness in a high degree. The danger, the chance of injury, is visibly imminent and great. No man of reason can fail to apprehend it. No prudent man would fail to avoid it. There seems to us no room for debate or question upon this proposition.

"The plaintiff's counsel, however, urges that, in this case, there were circumstances which justified the jury in declaring Goodwin's conduct to be free from fault. He calls our attention to the circumstances, that the day was very hot, that the cars were dusty and uncomfortably crowded, that no train man showed him a seat, or advised him where he could find a seat, that the conductor took his ticket on the platform, and made no objection to his standing there, and that he did not see the sign on the car door.

"Did all of these circumstances combined hide, in the least, the danger—make it less conspicuous and imminent? Would they in any way tend to throw a prudent man off his guard, or quiet his apprehensions of danger? All these circumstances may have made it more agreeable to ride on the platform in the open air than to stand inside the hot crowded car, but they did not in the least lessen the danger, nor the appearance of danger in so doing. That Goodwin was not ordered off the platform, could not have led him to believe it was safe to ride there. * * * He knew the place for passengers was inside the car. The discomfort of the hot and crowded car, did not make it any more prudent for him to ride outside upon the platform. Within the car, with all its discomforts,

was safety. Without the car was obvious peril. The safe path is often more narrow. and difficult than the way which leads to destruction, but no man is excused for that reason from seeking the one and avoiding the other."

The case is referred to and distinguished by the Supreme Court of Utah in the case of *Woods* v. *Southern Pacific Co.*, 9 Utah, 146, 33 Pac. 628, to which I shall again refer hereinafter.

In *Bainbridge* v. *Union Tr. Co.*, 206 Pa. 71, 55 Atl. 836, the law is clearly stated in the headnote thus:

"Where a passenger on an electric street car leaves his seat where he is safe, and steps down on the running board of the car, and remains there while it is in motion, he voluntarily puts himself in a place of danger and takes upon himself the risk of his position from any cause."

While numerous statements similar to those we have given above might be quoted, we deem the foregoing ample to show the trend of the decisions in the well-considered cases. If the reader desires to pursue the subject further, the following, among other, cases will be found directly in point: *Harding* v. *P. R. T. Co.*, 217 Pa. 69, 66 Atl. 151, 10 L. R. A. (N. S.) 352; *Bromley* v. *N. Y., N. H. & H. Ry.*, 193 Mass. 453, 79 N. E. 775; *C. & N. W. Ry. Co.* v. *Carroll*, 5 Ill. App. 201; *McCumber* v. *Boston Elevated R. R. Co.*, 207 Mass. 559, 93 N. E. 698, 32 L. R. A. (N. S.) 475; *Schoenfeld* v. *Milwaukee City Ry. Co.*, 74 Wis. 433, 43 N. W. 162; *Meyere* v. *N. C. & St. L. Ry. Co.*, 110 Tenn. 166, 72 S. W. 114; *Worthington* v. *Cent. Vt. Ry. Co.*, 64 Vt. 107, 23 Atl. 590, 15 L. R. A. 326.

Plaintiff's counsel, in support of their contention that inasmuch as the district court had submitted to the jury the questions of contributory negligence and assumption of risk, and the jury having found in favor of the plaintiff upon those issues, the finding is conclusive, cite and rely on the following cases: *G. H. & S. A. Ry. Co.* v. *Patillo*, 45 Tex. Civ. App. 572, 101 S. W. 492; *Holland* v. *St. L. & S. F. R. R. Co.*, 105 Mo. App. 117, 79 S. W. 508; *Burr* v. *Pa. R. R. Co.*, 64 N. J. Law, 30, 44 Atl. 845; *Barden* v. *Boston, etc., R. R. Co.*, 121 Mass. 426; *Dewire* v. *B. M. & R. Co.*, 148 Mass. 343, 19 N. E. 523, 2 L. R. A. 166; *Wheeler* v. *Grand Trunk Ry. Co.*,

70 N. H. 607, 50 Atl. 103, 54 L. R. A. 955; *D. & B. P. Rapid Transit Co.* v. *Dwyer*, 3 Colo. App. 408, 33 Pac. 815; *Allison* v. *St. L. & H. Ry. Co.*, 157 Mo. App. 72, 137 S. W. 896; *C., R. I. & P. R. R. Co.* v. *Lindahl*, 102 Ark. 533, 145 S. W. 191, Ann. Cas. 1914A, 561; *Stuchly* v. *Chicago City Ry. Co.*, 182 Ill. App. 337; *Graham* v. *McNeill*, 20 Wash. 466, 55 Pac. 631, 43 L. R. A. 300, 72 Am. St. Rep. 121.

While it is true that in the cases just cited it is held that the question whether a passenger was guilty of contributory negligence or had assumed the risk was for the jury, and that their finding must prevail, yet it is also true that in all of those cases the material facts and circumstances are clearly distinguishable from the case at bar. We cannot devote the time and space required to review those cases; hence we must limit ourselves to the statement with respect to them just made.

Counsel for the plaintiff, however, very strongly rely upon the case of *Woods* v. *Southern Pacific Co.*, supra. Indeed, they insist that the decision in that case is decisive of the case at bar. The contention is clearly without merit. While it is true that some of the cases we have hereinbefore quoted from are referred to in the decision in the Woods Case, yet those cases are referred to merely for the purpose of distinguishing them from that case. The decision in the Woods Case is based entirely on the fact that the defendant company was not only guilty of gross, but that it was guilty of "criminal negligence." In other words, that the acts of the company there in question were in their nature wanton. The doctrine upon which the decision in that case rests is clearly stated in the opinion in the following words:

"The distinction between this class of cases and the case at bar is very marked. In this case the act of defendant in placing the passenger car between loaded freight cars was criminal negligence of the gravest character, and the parties responsible for it were guilty of felony. See section 2352, 2 Comp. Laws Utah. The proof shows gross neglect in the defendant, in failing to keep the track and switch in repair. By the uncontradicted testimony it appears that the defect in the switch was quite apparent; that a similar wreck had occurred at the same switch a few days before, and nothing had been done or attempted to repair the defect. The in-

jury to plaintiffs' intestate was due to one or both of these negligent acts or omissions of defendant, and might have occurred to him, no matter where he had been on the car when the wreck occurred. The court, if in any case it is authorized to declare, as a matter of law, that the negligence of the injured party is such as to preclude a recovery, can only do so when it clearly appears that but for such contributory negligence the accident could not have happened."

It will be observed that the justice writing the opinion refers to the doctrine of contributory negligence of the plaintiff and under what circumstances contributory negligence may be declared as a matter of law. In view, however, that the court had declared the acts of the railroad company as constituting "criminal negligence," that is, in      3 a sense wanton, the question of contributory negligence was not involved. It is elementary doctrine that ordinary negligence is not a defense as against criminal or wanton acts, although they may be characterized as negligent acts merely. No one contends in this case that the defendant was guilty of criminal or wanton acts, and hence the Woods Case has no application here.

It is true that in the cases cited by plaintiff the courts held that the question of contributory negligence is for the jury, but in none of these cases is it held that that question under certain circumstances is not a question of law which the court must determine. This court has so often held that it has become elementary that the questions of both negligence and contributory negligence are questions of fact for the jury. It is therefore needless to cite the numerous cases where it is so held. It has, however, also very often been held by this court that where there is no conflict in the evidence, and no conflicting inferences are permissible, the question of negligence or contributory negligence is one of law and must be determined by the court. That is especial-      4 ly the case where, as here, the whole question turns upon plaintiff's own statements respecting his conduct in the premises, which conduct constitutes negligence. In view of his statements but one reasonable conclusion is permissible, and that is that the plaintiff's conduct in this case constituted negligence as matter of law.

In this connection plaintiff, however, contends that it was the duty of the defendant to provide for him sufficient room to ride safely, and that in failing to do that it had violated a duty imposed by law. Let it be conceded that under ordinary circumstances such is the duty of a common carrier. The doctrine has, however, no application here. It does not follow that because a carrier has failed to provide adequate seats in its cars a passenger has the right to take any position on any of the cars that he chooses, however dangerous, and that if he is injured he can recover damages for the consequences of such injury. As has clearly been pointed out in the decisions we have hereinbefore quoted from, if a carrier fails to provide adequate room and refuses to carry him, he has his action for breach of contract and may recover any damages he may have sustained that are directly attributable to the breach. That doctrine has special application here because there was nothing of an extraordinary nature which required the plaintiff to be carried on the train in question. The night was warm and comfortable and he was not exposed to any danger. Under such circumstances, he was not required to expose himself to danger. Upon the other hand, we are dealing with a case where the carrier, in a large number of trains, carried passengers to the resort during the day and night, and where many of them, instead of leaving the resort on defendant's trains as they had come, remained and undertook to go home on a particular train. If the passengers had left the resort in the order in which they had come to it, that is, had distributed themselves over a number of trains, there at least would have been no occasion to overload any of the trains. The plaintiff knew and thoroughly appreciated the situation. He was willing to remain for the last dance and take his chances to obtain a comfortable seat or position in the train, and when he had obtained a safe place, although he had not obtained a seat, he refused to remain there and deliberately selected a dangerous place, "wedging" himself between others on the car steps, which, he says, were overcrowded. To permit him to recover under such circumstances would place a premium upon the

most reckless conduct upon the part of passengers, and
would ultimately result in unjustly increasing the bur-
den upon all who are required to have recourse to the trains
of common carriers. While common carriers, as public serv-
ice corporations, must be held to a very high degree of care
in transporting their passengers, they are, however, not in-'
surers of the passengers' safety, which they must be held to
be if recovery is allowed in cases of this character.

The defendant further contends that the district court
erred in charging the jury on the issue of contributory negli-
gence. The instruction excepted to reads as follows:

"The burden of proving negligence always rests upon the party
alleging it. Therefore the burden of proving by a preponderance of
all the evidence in the case that the defendant was guilty of negli-
gence as alleged in the fifth amended complaint, and that such
negligence was the proximate cause of the injury of which he com-
plains, rests on the plaintiff, while the burden of proving by a pre-
ponderance of all the evidence that the plaintiff was guilty of con-
tributory negligence as defined in these instructions, in the particu-'
lars, or in some of the particulars, alleged in the answer of the
defendant to said fifth amended complaint, rests upon the defend-
ant."

While it may be true, as an abstract statement, that the
burden of proving negligence rests upon the party alleging
it, yet concretely applied such is not "always" the case, as
stated by the court. It sometimes happens that all of the evi-
dence upon the question of contributory negligence is elicited
from the plaintiff himself and the defendant produces no in-
dependent evidence upon that subject. Such is precisely the
case here. All the evidence respecting plaintiff's conduct,
which it is contended constituted contributory negligence, was
produced by himself, and the defendant, being satisfied with
plaintiff's evidence upon that issue, produced no evidence.
Notwithstanding that, however, the district court charged the
jury in the language above quoted. A trained lawyer would
perhaps have correctly analyzed and applied the language
used in the instruction, but laymen would naturally construe
and apply it as it is written, and as it is written it required
the defendant to affirmatively prove contributory negligence,
regardless of plaintiff's admissions. A jury of laymen would,

therefore, naturally assume that in view that the defendant produced no evidence at all respecting the alleged contributory negligence of teh plaintiff, therefore the defendant had failed to establish that issue by the necessary preponderance of evidence. We have had occasion at different times to pass upon instructions phrased somewhat similarly to the one in question. See *Dimmick* v. *Utah Fuel Co.*, 49 Utah, 430, 164 Pac. 872; *Dahlquist* v. *D. & R. G. R. R. Co.*, 52 Utah, 438, 174 Pac. 833; and *Conway* v. *S. L. & O. Ry. Co.*, 47 Utah, 510, 155 Pac. 339, L. R. A. 1916D, 1109. An examination of those cases will disclose that while the language· used in the instructions there in question was not unqualifiedly approved by this court, yet, for the reason that in those cases the evidence respecting contributory negligence came from the defendants, and in view of the facts and circumstances there disclosed, it was held that the errors, if any were committed by the district courts in phrasing the instructions there in question, were not prejudicial to any substantial rights of the defendants, and hence the judgments.were not reversed upon that ground. As before pointed out, however, we are now confronted with a different proposition. Here the court did not advise the jury what, if any, effect plaintiff's own evidence or admissions should receive. The ordinary and natural meaning of the language used by the court to the minds of ordinary layment would therefore be to the effect that, the defendant having failed to produce any affirmative evidence upon the issue of plaintiff's contributory negligence, therefore that issue should be found in favor of plaintiff. In view of plaintiff's statements respecting his acts and conduct, which, under the circumstances, were certainly inexcusable, the jury must have construed and applied the language of the instruction as we have indicated, or they could not have arrived at the conclusion that plaintiff was not guilty of contributory negligence as that term was defined by the district court. It does not seem at all probable that disinterested minds could have arrived at the conclusion that plaintiff's conduct was excusable while defendant's was not unless they felt impelled to follow and apply the language of the instruction literally.

The precise question just discussed was before the Supreme Court of Kansas·in the case of *Burns* v. *Railway Co.*, 66 Kan. 188, 71 Pac. 244, where an instruction on the burden of proving contributory negligence in terms almost precisely like the one in question here was passed on. In reviewing the instruction the court there said:

"The instruction tendered leaves out of consideration any negligent act of Burns appearing in the evidence introduced to support his side of the case. It is misleading in that it tends to minimize the effect of any negligent conduct of his which might have defeated the action had the railway company introduced no evidence. If the plaintiff below, in establishing his case, had shown that his own negligence contributed directly to the injury, he would have failed to make out a prima facie right of recovery. (*U. P. Ry. Co.* v. *Adams*, 33 Kan. 427, 6 Pac. 529.) In such case the giving of the instruction asked would lead the jury to believe that some affirmative proof introduced on the part of the railway company, tending to show such contributory negligence as the plaintiff had already shown, was necessary to defeat a recovery."

While, therefore, under circumstances like those in the cases we have cited from this court, such instructions standing alone may not constitute prejudicial error, yet where the facts and circumstances are as they are in the case at bar but one result can follow, and that is that the instruction constitutes prejudicial error.

There are other instructions which the defendant contends were erroneous and hence constituted prejudicial error. While it is true that some of the instructions complained of were faulty in some particulars, yet, in view of the whole charge, the defects complained of would not be sufficient to authorize us to reverse the findings of the jury and judgment if there had been no other errors.

After a most careful consideration of the whole record, the writer feels impelled to state that to permit this judgment to stand would result in a clear misapplication of the law; hence the judgment should be, and it accordingly is, reversed. Defendant to recover its costs on appeal.

WEBER, C. J., and GIDEON, THURMAN, and CHERRY, JJ., concur.

On Application for Rehearing.

FRICK, J.   Plaintiff's attorneys have filed a petition for rehearing, and in support thereof have filed a brief in which the propositions originally presented and decided are reargued.   We shall not, and in the nature of things cannot, go over the whole case again.

Counsel have, however, in their brief pointed out that the decision in the case of *Winters* v. *B. & O. R. R. Co.* (C. C.) 163 Fed. 106, which was cited and quoted from in the original opinion, was reversed in 177 Fed. 44, 100 C. C. A. 462.   Counsel are to be commended for their diligence in discovering the status of the Winters Case, and we thank them for having called our attention to the matter.   This court does not want to cite decisions that have been reversed or overruled, although it may be, and sometimes is, the case that the decision which is reversed or overruled is quite as sound in principle as is the overruling or reversing decision.   The citation of reversed or overruled cases should, however, be avoided so as to prevent them from misleading both court and counsel in subsequent cases.   It is a matter worthy of comment, however, that the doctrine or principle laid down in the excerpt that we quoted from the Winters Case was not overruled or questioned in the reversing opinion.   Indeed, it could not well have been, since the proposition is well established.   What is held by the appellate court in reversing the Winters Case is that the lower court had erred in classifying the case in view of the facts which are more fully stated in the opinion of the appellate court.   In view, however, that the Winters Case has been overruled, the excerpt quoted therefrom and all that is said in the original opinion respecting that case will be eliminated from the opinion and will not be officially published.

It is, however, seriously contended that we erred in holding under the facts that the plaintiff was guilty of contributory negligence as matter of law.   To sustain their contention counsel have cited the following among other, cases:  *Willmott* v. *Corrigan Con. St. Ry. Co.,* 106 Mo. 535, 17 S. W. 490; *Yazoo, etc., R. R. Co.* v. *Byrd,* 89 Miss 308, 42 South 286; *Vessels* v. *Metropolitan, etc., Ry. Co.,* 129 Mo. 708, 108 S. W. 578.   It is not necessary to refer to the other cases cited, as they are

either clearly distinguishable from the case at bar or come within the principles of the cases last above cited, which we shall now proceed briefly to consider.

In the Willmott Case a boy 12 years of age stepped onto the car steps of a street car propelled by mules. He got on the steps without intending to pay his fare he said, and so told the driver, who was in sole charge of the car. The boy, after boarding the car, and after telling the driver what we have just stated, wanted to alight therefrom, and when he attempted to do so the driver "whipped up" the mules and they started off on a run, and the boy, in attempting to alight, was thrown under the wheels of the car and was injured. In that case, therefore, a lad 12 years of age was charged with contributory negligence as matter of law, while the court held to the contrary. This court has so frequently held that the question of whether an infant was guilty of contributory negligence in doing or omitting to do a particular act is a jury question that it has become elementary. Moreover, in the Willmott Case the driver of the car was guilty of a willful wrongful act after he saw the boy's predicament. Further comment is unnecessary.

In the Byrd Case the injured passenger was standing on the car steps and was in an intoxicated condition, all of which was well known to the conductor of a fast running train. The conductor permitted him to remain on the platform and on the steps of the car without objection. The intoxicated passenger fell off the steps of the car and was injured. The conductor was immediately apprised of the fact and was asked to stop the train, but he would not do so until the train had arrived at the next station. In the meantime a heavy rainstorm supervened, and the passenger was permitted to remain in his injured condition in the rainstorm, and he subsequently died. At the trial it developed that the injuries from his fall might not have been fatal, but that the exposure to the rainstorm might have contributed to his death. The cause of death was therefore left in some doubt. The court held that although the passenger was in the wrong, yet, in view of all the facts and circumstances, the case was a proper one for the

jury. No one will doubt the soundness of the court's conclusion.

In the Vessels Case, supra, which is another street car case, a boy was standing on the steps with the consent of the conductor and the knowledge of the gripman who was operating the car. While the boy was thus standing, the car collided with a wagon and the boy was injured by the collision. In referring to the duty of the gripman who operated the car the court, in the course of the opinion, said:

"Knowing that plaintiff (the boy) was where he might receive an injury from the wagon, it was the duty of the gripman not only to warn him of the danger, but, when he saw the warning was not being heeded with proper alacrity, to stop the car to avoid injuring him. From the evidence of plaintiff, it appears that the gripman had knowledge of the danger in sufficient time to stop the car."

Here again we have thus not only an infant to deal with, which is a fact referred to in the opinion, but we have a case of actual wrongdoing on the part of the gripman in not avoiding the collision, which the court says he could have done before the injury to the boy resulted.

The foregoing cases illustrate the character of cases cited by counsel and in which the courts hold that the question of contributory negligence should have been submitted to the jury. While in numerous cases cited by them such is the holding, yet those cases are far outside of the facts of the case at bar. The case at bar is not even remotely related to many of the cases referred to by counsel. Here we have an adult leaving a safe place in a car to find another place on the train which he tells us was "vastly overcrowded." After leaving a safe place, he not only takes an unsafe and dangerous position on the running board of a fast moving train, but, according to his own and his companion's statements, they literally "wedged" or forced themselves between others standing on the running board, so that their position must have been doubly insecure, first, because to stand on the running board is, in and of itself, an unsafe and dangerous position, and, second, in "wedging" or crowding themselves in where there was insufficient room increased the danger. Moreover, we do not have a case of subsequent derailment or collision after

plaintiff had voluntarily assumed a dangerous position, but all we have here is a lurching or swaying of the cars from side to side in passing over, or immediately after the car had passed over, a switch. There are millions of passengers who ride upon the passenger trains of this country annually, and it is safe to assert that all know that cars sway or lurch more or less in passing over switches, depending, as a matter of course, upon the condition of the tracks.

In view that counsel have cited two cases from the Supreme Court of Missouri, namely, the Willmott and the Vessels Cases, it may not be out of place to call attention to another case from that state, namely, *Carroll* v. *Interstate, etc., Co.,* 107 Mo. 653, 17 S. W. 889. In that case the rule applicable to facts like those in the case at bar is correctly stated and is in strict harmony with our conclusions in the original opinion.

Counsel, however, refer to and quote from 3 Thompson Comm. on the Law of Negligence, § 2947. They must have quoted from another edition or from some other section, since the quotation is not in accordance with the text of section 2947 (2d Ed.). In the latter section Thompson says:

"The general rule is that if a passenger elects to ride upon the platform of a steam railway car, without any necessity, real or apparent, for taking that position, and, while so riding, is injured under such circumstances that he would not have been injured if he had not taken that position, he cannot recover damages from the company. In other words, for a passenger to ride in a position of such obvious danger, without any real or apparent necessity for so doing, is generally regarded as negligence per se."

The author there states the general rule to which there are exceptions, some of which are illustrated in the cases cited by counsel and to which we have referred. The uncontroverted facts of the case at bar, however, do not bring it within any of the exceptions; but, as Thompson says, such a case comes squarely within the general rule that no recovery can be had.

In the following section of Thompson, 2948, the author further says:

"The passenger is not excused in taking such a dangerous position by the mere fact that he cannot get a seat inside the car, pro-

Appeal from Second District

vided there is standing room inside, although his position when so standing would be one of discomfort. * * *"

As a matter of law, a passenger who suffers discomfort and is injured through the carrier's fault in failing to provide adequate "accommodations and protection" may recover damages as well for those discomforts as for the reasons  7 stated in the original opinion. This court is firmly committed to that doctrine. See *McCollum* v. *So. Pac. Ry. Co.*, 31 Utah, 494, 88 Pac. 663, and the two cases following that case.

There is only one other case we shall refer to, namely, *Little Rock & Ft. S. Ry.* v. *Miles,* 40 Ark. 298, 48 Am. Rep. 10. The court, at page 322 of 40 Ark., states the law in the following words:

"But there are certain portions of every railroad train, which are so obviously dangerous for a passenger to occupy and so plainly not designed for his reception that his presence there will constitute negligence as a matter of law and preclude him from claiming damages for injuries received while in such position. A passenger who voluntarily and unnecessarily rides upon the engine or the tender, or upon the pilot or bumper of the locomotive, or upon the top of a car, or upon the platform, cannot be said to be in the exercise of that condition and discretion which the law requires of all persons who are of full age, of sound mind and of ordinary intelligence."

In support of the text a large number of cases are cited to which it is not necessary to refer.

Much is said in counsel's latest brief respecting the question of assumption of risk and that we also erred in that regard. In the opinion we carefully explained why that subject was referred to. Since when is a reviewing court prohibited from referring to matters that were pleaded and which were submitted to the jury as a part of the issues? The explanation we made was not even necessary, but, having made it, it is, to say the least, somewhat unusual for counsel to take up that matter as is done in their brief. The assertion that this court based the decision upon the evidence favorable to appellant can only be explained upon the ground that counsel's zeal for their client and the natural bias arising out of the relation must have betrayed them. The decision

with respect to contributory negligence is based entirely upon plaintiff's own statements and those of his companion. Those statements related to facts that no one else testified to. Nor could any one else do so, since those statements related to plaintiff's own acts and conduct which occurred in the darkness of the night and which were not known to any one except to himself and to his companion, and could therefore not be testified to by any one else. They alone could disclose what their conduct was at the time. If, under such circumstances, a court may not rely upon a party's statements respecting his acts and conduct, under what circumstances may that be done? There was absolutely no contradiction of nor any dispute concerning plaintiff's statements, and in view that no one was in a position to dispute or to contradict them for the reason that the real facts were known only to himself and to his companion, the only recourse for any court is to accept the statements as true.

The case received most careful consideration both as to the facts and as to the law, and, after mature reflection, we were forced to the conclusion stated in the original opinion. We have discovered nothing which would justify a different result.

The petition for rehearing is therefore denied.

WEBER, C. J., and GIDEON, THURMAN, and CHERRY, JJ., concur.