### FISH v. BALL.
#### No. 1572.

Circuit Court of Appeals, Tenth Circuit.
Dec. 22, 1937.

Rehearing Denied Feb. 5, 1938.

Willard Hanson, of Salt Lake City, Utah (Nephi Jensen, of Salt Lake City, Utah, on the brief), for appellant.

Frank A. Johnson, of Salt Lake City, Utah (Dey, Hoppaugh, Mark & Johnson, of Salt Lake City, Utah, on the brief), for appellee.

Before BRATTON and WILLIAMS, Circuit Judges, and SYMES, District Judge.

SYMES, District Judge.

Joseph S. Fish, appellant (plaintiff below), sued to recover damages for personal injuries sustained on August 1, 1936, while a passenger for hire on a passenger car of the defendant. The latter operates a single track electric road carrying freight and passengers from Salt Lake City to Payson, Utah, and other points. Fish and a friend, a Mr. John, boarded the car by the rear door at Sixth South and First West streets in Salt Lake City for a trip to Provo and rode with five ladies and two other men on the inclosed rear platform. After the car had proceeded about three miles, it ran into the rear of another car of defendant stalled ahead on the single track, due to a dislodged trolley. The plaintiff was thrown to the floor and suffered injuries for which he brought this action.

The court directed a verdict for the defendant at the close of all the evidence, on which judgment was entered. Plaintiff appeals.

The receiver failed to offer any evidence tending to show that the collision occurred without negligence on the part of the company.

The action of the court was based upon section 77-0-18, Rev.Stats. of Utah, 1933, reading:

"In case a passenger on a train of a railroad company shall suffer personal injury while riding on the platform of any car or on any baggage, wood, gravel or freight car in violation of the company's printed regulations posted at that time in a conspicuous place inside its passenger cars then in such train, or in violation of verbal instructions given by any officer of such train or company, the railroad company shall not be liable for such injury provided at the time it had furnished and had available room inside of its passenger cars then in such train sufficient for the accommodation of the passengers."

On the inside of the door of the car was the following notice:

"Passengers are forbidden to ride on platform or to operate doors or traps."

There is testimony that the conductor came along shortly after plaintiff and his friend got on, took their tickets and told the young ladies there were seats in the smoking compartment at the head end of the car. John inquired if there were any seats in the front end and the conductor said "you may get a seat." He thereupon walked to the front end and sat in the motorman's room, preferring to ride there. He said the aisle was crowded and that he did not see any seats at all in the regular compartment, and people were standing up there. The seats were taken in the smoker and there was only one vacant seat in the baggage compartment, which he took. A woman passenger testified there was a vacant seat next to her. The conductor testified he told the plaintiff to go inside and get a seat, that there were 61 passengers in the car, which seats 64, provided some sit on a plank on each side of the baggage compartment—a separate inclosure from which passengers were forbidden unless the smoker and main compartment were full.

The car was entirely inclosed. A door led from the rear platform into the main seating compartment of the car, in the front of which was a smoking compartment and beyond that the motorman's room.

A witness, Jolley, testified he got on the car at Salt Lake ten minutes before it started and walked from the rear end clear through to the motorman's compartment before he found a seat; that later several other people came in there and fully occupied the side benches and he was positive there were no available seats at that time in the main portion of the car or in the smoker. His companion, Mr. Neville, testified to the same effect.

Plaintiff stated when he got on the car there was no chance of getting a seat as none were vacant; that there was a crowd on the platform and in the aisle. The car made no other stop after he got on and nobody got off.

"I went to the door of the car looking for a seat, but I could not get past the door, the aisle was crowded. I could see there was no seat there."

(Further) That there were two or three on the platform with him and ladies in the corridor he would not deny, but did not remember the conductor telling him to go inside and take a seat.

"I could see for myself there were no seats there. I was compelled to stand on the platform."

The court, in directing a verdict for the defendant, referred to the conductor's testimony to the effect that there were seats inside the car and that of the woman passenger that there was a vacant seat next to her and stated that the testimony of the plaintiff that he did not remember, but would not deny, the conductor told him to go into the car, did not make an issue of fact.

The extracts from the testimony we have set out are not decisive on the question of whether there was actually a vacant seat in the main passenger compartment, but are sufficient to make it one of fact. Four witnesses testified there was no available room in either the main compartment or the smoker and it is of some significance that passengers were permitted in the motorman's compartment, where they were not supposed to be and probably would not have been had there been room elsewhere.

■ A jury might well find that there were no vacant seats. If so and the plaintiff was thereby compelled to ride in the rear vestibule, the direction of the conductor was an idle gesture and the statute had no application. Clearly the issue should have been submitted to the jury.

■ This statute is a most unusual one and according to counsel was passed in the horse and buggy days when rear platforms of street cars were not inclosed and there was ample reason for such a regulation. By its terms there must be more than a posting of the regulation or the giving of directions which are disregarded. In addition, there must be room inside the car. Nor does it declare plaintiff guilty of negligence in riding on the rear platform, when according to his best observation there were no seats available. It was the duty of the plaintiff to go inside the car if he could reasonably do so, but, under the circumstances disclosed by the record, he was not required to force his way through the crowd of men and women by brute strength and awkwardness in order to determine whether or not there was a seat. Rolette v. Great Northern Ry. Co., 91 Minn. 16, 97 N.W. 431, 1 Ann.Cas. 313; Ward v. Chicago Railway Co., 102 Wis. 215, 78 N. W. 442.

■ We are required to enforce this statute, but in so doing bear in mind that the reason for it in the main no longer exists, and thus avoid the injustice of too strict a construction. The fact that the plaintiff was riding on the platform did not contribute to his injury, and granting for the moment that the plaintiff technically violated the statute, the record fails to disclose any causal connection between such violation and his injury.

■ Woods v. Southern Pac. Co., 9 Utah 146, 33 P. 628, approved in Burbidge v. Utah Light & Traction Co., 61 Utah 96, 211 P. 691, and Taylor v. Bamberger Electric R. Co., 62 Utah 552, 220 P. 695, declares the law in Utah to be that negligence if any of the passengers must have some proximate connection with the injury suffered or it will not defeat his recovery. See, also, Kansas & A. V. Ry. Co. v. White, 8 Cir., 67 F. 481.

■ Restatement of the Law, Torts II, § 463, says:

"Contributory negligence is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection and which is a legally contributing cause, co-operating with the negligence of the defendant in bringing about the plaintiff's harm."

■ Surely if a jury should find that there was no seat available for the plaintiff, it could not be said as a matter of law that plaintiff's conduct fell below the standard to which he should conform.

We conclude the court erred in directing a verdict for the defendant; that the judgment should be reversed and the cause remanded with directions for a new trial.

It is so ordered.